**From:** Dennis Cariello
**Sent:** Monday, June 1, 2020 5:29 PM
**To:** Finley, Steve <Steve.Finley@ed.gov>
**Cc:** Mangold, Donna <Donna.Mangold@ed.gov>
**Subject:** RE: Florida Coastal School of Law Update

Steve & Donna

I hope all is well and hope you are both staying safe (a hope that seemed necessary enough without this weekend's activities).

Attached is the full set of documents relevant to your inquiry. Attached are:

- The voting rights Waiver letter sent by Sterling to InfiLaw Holding dated 4/22/20, waiving rights on behalf of Sterling Capital Partners, L.P. and Sterling Capital Partners GmbH & Co. KG, along with the InfiLaw Holding acknowledgements
- The voting rights Waiver letter sent by Rick Inatome, Peter Goplerud, Don Lively and Scott Thompson to InfiLaw Holding dated 4/22/20, along with the InfiLaw Holding acknowledgements
- The resignation from Chris Hoehn-Saric from the Board of Directors of InfiLaw Holding, LLC effective 4/22/20
- The latest InfiLaw Holding Operating agreement is attached. The last update was done on July 31, 2017. Note that there have been no updates since the change.
- The full credit agreement and amendments are included in the attached zip file. The latest amendment was done August 31, 2018.
- There were no additional reports required to be filed by Sterling due to this change
- There were no additional reports required to be filed by InfiLaw Holding due to this change

Also, the latest cap. table is included in Appendix A of the operating agreement. With respect to ownership and voting rights, the operating agreement specifies that all of the Preferred Units are non-voting. It also specifies that the C Units are non-voting. No Class B shares have been issued. Therefore, the only voting shares that exist are the Class A shares.

Per Appendix A, Sterling Capital Partners L.P. owns 86.815058 of the A shares and Sterling Capital Partners GmbH and $ Co. KG owns 1.264942 Class A shares for a total of 88.08 shares. If you divide the % of the total, Sterling Capital Partners owns 98.6% and GmbH owns 1.4%, which is consistent with what has been communicated through Questions #69 in the EAPP. I note this because a prior email of mine had erroneously identified that Rick Inatome, Scott Thompson, Don Lively and Peter Goplerud owned the remaining 1.4% of the Series A interests. This was mistaken. Their interest (that of Inatome, Thompson, Lively, and Goplerud) was in the Series C, non-voting shares. Also, although Inatome, Thompson, Lively, and Goplerud executed waivers, it appears that was done out of an abundance of caution and was unnecessary (as they had no voting rights to waive)

I will start working on your most recent email shortly.

Thanks,

Dennis

**From:** Finley, Steve [mailto:Steve.Finley@ed.gov]
**Sent:** Wednesday, May 13, 2020 12:41 PM
**To:** Dennis Cariello
**Subject:** RE: Florida Coastal School of Law Update

Thank you.

**From:** Dennis Cariello <dennis.cariello@hmbr.com>
**Sent:** Wednesday, May 13, 2020 12:40 PM
**To:** Finley, Steve <Steve.Finley@ed.gov>
**Subject:** RE: Florida Coastal School of Law Update

Steve – I just wanted to acknowledge this. I spoke with the school and we are pulling everything together.

Hope you are doing well.

Stay safe,

Dennis

**From:** Finley, Steve [mailto:Steve.Finley@ed.gov]
**Sent:** Tuesday, May 12, 2020 3:56 PM
**To:** Dennis Cariello
**Subject:** RE: Florida Coastal School of Law Update

Hi Dennis –

The Department request additional information related to the changes for Infilaw that you recently reported. As a follow-up to your April 24 email, please provide all of the documents that were executed in connection with the changes that you describe below, and provide any reports that were filed in connection with changes to the voting rights or related actions that were taken, along with the applicable minutes of meetings of members or

FCSL - 000014

managers that were held where this issue was discussed or voted upon (including minutes and any other documents that were reviewed, presented or discussed at any such meetings).

Please include with your response copies of any documents that identify all of the voting rights or voting interests for all classes or series of membership interests classes, and also identify all classes or series that did not have voting rights either before or after this change. For each class or series, identify the person or entities that comprise the membership interests therein. We also want to review the limited liability company agreement or similar document both before and after the changes that you have reported from April 2020.

Also, please provide copies of the three Credit Facility Agreements with Senior management and any amendments made to them since they were originally created, and indicate if there are any planned changes to them based on the changes you reported in April.

Thanks

Steve

---

**From:** Dennis Cariello <dennis.cariello@hmbr.com>
**Sent:** Friday, April 24, 2020 8:36 AM
**To:** Finley, Steve <Steve.Finley@ed.gov>
**Subject:** Florida Coastal School of Law Update

Steve,

I hope all is well and you and the family are healthy and safe. I'm very sorry to hear the news that Stan died. I always enjoyed my interactions with Stan – he was a funny guy and always had a smile. It's so impressive that he was in public service for so long. Quite a legacy. Please give my best to everyone in OGC.

I am writing to you in regards Infilaw. I was informed yesterday of a few corporate moves that will be effective on April 24 (today) and want to give you a heads up with respect to them. Based upon the relevant regulations, they do not constitute a change in ownership resulting in a change in control. However, I would like to discuss this matter with you so the school will know whether it can provide an update in Question 69 of the E-App or must go through the process for a change in control.

Sterling Capital Partners LP ("Sterling"), the 98.6% owner of Infilaw Holding, LLC (which in turn is the 100% owner of Infilaw Corp., which in turn, is the 100% owner of Florida Coastal School of Law Inc. (Florida Coastal), the level one owner of Florida Coastal) is going to voluntarily and irrevocably waive and relinquish its (i) voting rights, (ii) right to appoint board members of Infilaw Holding, and (iii) right to prevent a quorum at any meeting. In addition, Rick Inatome, Scott Thompson, Don Lively, and Peter Gopelrud - the persons holding the remaining 1.4% of the Series A membership units (the units with voting rights) also will relinquish their rights as well. Infilaw Holding will acknowledge such voluntary and irrevocable relinquishment of rights.

Currently, the Board of Infilaw Holding exercises control over the very limited matters (such as whether to take on debt, insurance matters, and setting top-line budget numbers). As with all American Bar Association (ABA) accredited law schools, primary governance and decision making authority for nearly all questions at Florida Coastal rests with the dean and faculty of the school. Note that Sterling and the other series A holders are not giving up any other rights at this time and remain the equity holders of Infilaw Holding.

Relatedly, we will notify the Department of Education (Department) that the board will change. R. Christopher Hoehn-Saric, the Sterling representative, will come off the board. As we have discussed, Sterling is sunsetting the fund that owns Infilaw, but wants to support the final transition to University

FCSL - 000015

affiliation -- once that can be approved by the ABA. Rick Inatome will remain on the board, and we will add Scott Thompson (who currently serves as CFO of Infilaw and is on the board of Infilaw Corp.). In addition, in furtherance of our hoped for merger with Campbellsville University ("Campbellsville") (which we have previously discussed), Florida Coastal plans to move forward with its Joint Marketing Agreement with Campbellsville. To support this move, we will also appoint Dr. Keith Spears, Vice President and Assistant to the President at Campbellsville University.

I want to note that Messers. Hoehn-Saric and Inatome are the only board members that should be listed as active on the Infilaw Holding Board. There have been a number of changes entered previously that were never "finalized" on the E-App due to Florida Coastal's current month-to-month status. In addition, in the last round of proposed changes related to the filing of the pre-acquisition review, we proposed adding Martha Barnett, Jason Spears and Rodrick Robertson, board members for the would-be nonprofit owner, to the board. That did not occur, so those persons are not on the board.

While this action is a unique one, it does not constitute a change in ownership resulting from a change in control under the Department's regulations (or under the ABA standards). Importantly, none of the owners to Infilaw are changing. After this change, for example, Sterling will still be the owner and 98.6% equity holder of Infilaw Holding (and the remaining equity holders will retain their equity as well). This action does not appear to meet the definition in 34 CFR 600.31(c)(1) (note, I recall the Department has treated Infilaw as a closely held corporation in the past). Indeed, here, no person is acquiring more than 50% of the total outstanding voting stock; Sterling (and the other equity holders are retaining all of their membership units, but only relinquishing certain rights (including voting rights) associated with those units. Similarly, no person who holds an ownership interest in an Infilaw entity (Holding, Corp. or Florida Coastal) is acquiring control of any voting units. Moreover, it cannot even be said that Infilaw Holding is "acquiring" any control over the voting membership units; that entity will just operate as it has in the past, albeit without the ability of the equity holders to appoint new members of the Board or vote on any matters. Lastly, while the equity holders are relinquishing their voting rights, they are not relinquishing ownership of the units themselves and the other economic rights associated with those units, thus it cannot be said that any person who holds or controls 50% or more of the total outstanding stock will cease to hold that portion of stock.

Florida Coastal intends to file an E-App notice letting the Department know of the board changes and of the changes to the equity holders' rights in a narrative statement in Question 69. Although I do not believe this is a change in ownership, I would appreciate your guidance here. Obviously, our intent is to comply with the regulations and we would not like to suffer any negative consequences from a completely avoidable regulatory infraction.

Importantly, we do not believe this alters any obligations any of the parties have with regard to the Department, and the relinquishment of voting rights does not affect whether they are considered "owners" under 34 CFR 668.174. We also note that the Department still has a letter of credit posted by Florida Coastal in the amount of $5.681 million and this change has no effect on that either.

I anticipate the school will file the E-App within the next few days to officially notify the Department of the change and I look forward to your guidance on that action. Again, we do not wish to accidently trigger a change in control for which we have not filed a materially complete application. Although I do not believe this constitutes a change in control, maintaining our eligibility is the paramount concern and I look forward

to the Department's guidance on how to classify this matter.

I am happy to discuss this at your convenience.

Thanks & stay safe,

Dennis
646-415-4471

Dennis M. Cariello
Shareholder



| | |
|---|---|
| E-MAIL | DENNIS.CARIELLO@HMBR.COM |
| MAIN | 212.422.4900 |
| DIRECT | 212.422.4909 |
| MOBILE | 646.415.4471 |
| FAX | 312.946.9818 |

40 BROAD STREET • 7TH FLOOR • NEW YORK, NY 10004
WWW.HMBR.COM

Visit our Higher Education Blog: www.higheredlawblog.com

NOTICE OF CONFIDENTIALITY: This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution of any kind is strictly prohibited. If you are not the intended recipient, contact the sender via reply e-mail and destroy all copies of the original message.

NOTICE OF CONFIDENTIALITY: This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution of any kind is strictly prohibited. If you are not the intended recipient, contact the sender via reply e-mail and destroy all copies of the original message.

NOTICE OF CONFIDENTIALITY: This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution of any kind is strictly prohibited. If you are not the intended recipient, contact the sender via reply e-mail and destroy all copies of the original message.

NOTICE OF CONFIDENTIALITY: This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution of any kind is strictly prohibited. If you are not the intended recipient, contact the sender via reply e-mail and destroy all copies of the original message.

NOTICE OF CONFIDENTIALITY: This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution of any kind is strictly prohibited. If you are not the intended recipient, contact the sender via reply e-mail and destroy all copies of the original message.

NOTICE OF CONFIDENTIALITY: This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution of any kind is strictly prohibited. If you are not the intended recipient, contact the sender via reply e-mail and destroy all copies of the original message.

NOTICE OF CONFIDENTIALITY: This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution of any kind is strictly prohibited. If you are not the intended recipient, contact the sender via reply e-mail and destroy all copies of the original message.

NOTICE OF CONFIDENTIALITY: This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution of any kind is strictly prohibited. If you are not the intended recipient, contact the sender via reply e-mail and destroy all copies of the original message.