# STERLING PARTNERS

January 6, 2021

Dean Goplerud,

We understand that, in connection with the issuance of a new Provisional Program Participation Agreement (PPPA) for Florida Coastal School of Law (FCSL), Sterling Capital Partners, LP (SCP I) has been requested to guarantee (cosign) the PPPA and agree to be jointly and severally liable for FCSL's obligations under the PPPA. We also understand that further information on SCP I has been requested to support the execution of the PPPA without SCP I. Accordingly, SCP I is providing the following information and additional documentation.

With respect to SCP I's investment in Infilaw Holding, LLC, a parent entity of FCSL, we first note that SCP I is not involved in either the day-to-day activities or the strategic direction of FCSL. Rather, SCP I is a passive investment vehicle. SCP I has no board representation either at FCSL or its parent companies.

By way of additional background, SCP I is an investment fund that commenced operations in 2002 for the purposes of making financial investments in businesses to generate long-term capital appreciation for the benefit of its investors. These investors include public pension funds and endowments among others. In connection with the formation and operation of the fund, its general partner and manager are subject to a variety of contractual and other restrictions and are regulated by the United States Securities and Exchange Commission. Also, as described in more detail below, Section 6.2 of the fund's governing documents prohibit the fund from making guarantees on behalf of Infilaw Holding, LLC or its subsidiaries during this period of the fund's lifecycle.

Funds such as SCP I are generally subject to a fixed term of ten years, subject to a limited number of extensions. After the fund's term, the fund is then in dissolution and the primary focus of the fund is to sell, transfer or otherwise dispose of the remaining assets of the fund in an orderly fashion and operation of the fund is generally restricted to matters in furtherance of the ultimate winding up of the fund. SCP I's fund term expired on October 15, 2017 and therefore the fund is currently in dissolution. Our outside fund counsel has advised against the fund cosigning the PPPA and thereby guaranteeing FCSL's obligations under the PPPA on a joint and several basis for a number of reasons, including the status of the fund as a fund in dissolution and limitations under the fund's partnership agreement with respect to guarantees of portfolio company obligations as described more below.

As documentary support for these matters, we offer the following information and references which support our own conclusions and the advice of outside fund counsel:

First, SCP I, a Delaware limited partnership, commenced operations on October 15, 2002. Section 9.1 of SCP I's limited partnership agreement (LPA) governs the term of the partnership which is ten years from October 15, 2002. The term was extended by three years (with the approval of SCP I's SCP I's Limited Partner Advisory Committee for the third extension year) to

**Chicago**
401 N. Michigan Avenue, Suite 3300
Chicago, IL 60611
(312) 465- 7000
FAX: (312) 465-7001

**BALTIMORE**
400 East Pratt Street, 8th Floor
Baltimore, MD 21202
(312) 465- 7000
FAX: (312) 465-7001

**FCSL - 000040**

October 15, 2015.  In addition, SCP I's term was further extended annually by the majority approval of its limited partners through October 15, 2017.  However, SCP I's fund term was not extended by its limited partners beyond October 15, 2017 and, as a result, the fund has been in dissolution to allow for an orderly sale, transfer, or disposition of the fund's investments and ultimately a termination of the fund.  Section 9.4(a) of the LPA addresses liquidation of the partnership which in summary states that "Upon termination and dissolution, the Partnership shall be liquidated in an orderly manner in accordance with the provisions of the Agreement and the Partnership Act."

Second, the general partner is not permitted to extend guarantees at this stage of the fund's life.  Section 6.2 of SCP I's LPA addresses limitations on guarantees which are treated as fund indebtedness for purposes of the fund's governing documents.  Specifically section 6.2(c) states "The Partnership may guarantee only the obligations of Portfolio Companies (and any direct and indirect subsidiaries thereof), and for the purposes of Section 6.2(b), the guarantee of a Portfolio Company's obligations shall be treated as Partnership indebtedness."  Section 6.2(b) states "The stated maturity of any indebtedness for borrowed money incurred by the Partnership shall not extend ***beyond the initial ten year term of the Partnership***." [emphasis added]  The intent of the agreement to limit guarantees to the initial ten years is designed to be consistent with the activities later in the fund's life which are generally geared towards the winding up of the fund's affairs and to avoid situations to further extend operations.

In support of these references to the governing documents, we have enclosed the following attachments:
   A. SCP I's LPA, Amended and Restated Limited Partnership Agreement as of August 11, 2013 and
   B. The final extension of SCP I through October 15, 2017, Amendment #6 to the A&R LPA of SCP I

We hope that this information is useful to summarize the status of the fund and advice provided by SCP I's counsel with respect to this matter.  Please let us know if you have any further questions or comments.

Kind regards,

M. Avi Epstein
Chief Operating Officer and General Counsel
Sterling Partners

**AMENDED AND RESTATED
AGREEMENT OF LIMITED PARTNERSHIP
OF
STERLING CAPITAL PARTNERS, L.P.**

THIS AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP is dated as of August 11, 2003, by and among the General Partner and the Limited Partners. The General Partner and the Limited Partners are collectively referred to herein as the "<u>Partners</u>."

The Partners who are parties hereto are parties to that certain Agreement of Limited Partnership of Sterling Capital Partners, L.P., dated as of October 15, 2002 (the "<u>Prior Agreement</u>"). The parties desire to amend and restate the Prior Agreement effective as of the date hereof for the purpose of changing the terms of the Prior Agreement. Upon execution and delivery of this Agreement by the requisite parties to the Prior Agreement needed to effect such an amendment thereof, the Prior Agreement shall be superseded by this Agreement and canceled in its entirety.

The parties hereto agree as follows:

ARTICLE I

GENERAL PROVISIONS

1.1     <u>Formation</u>.  The Partners hereby agree to form a limited partnership (the "<u>Partnership</u>") pursuant to and in accordance with the Delaware Revised Uniform Limited Partnership Act, as amended from time to time (the "<u>Partnership Act</u>"). The term of the Partnership commenced upon the filing of the Certificate of Limited Partnership with the Secretary of State of Delaware (the date of such filing is referred to herein as the date of "formation" of the Partnership) and shall continue until dissolution and termination of the Partnership in accordance with the provisions of <u>Article IX</u> hereof.

1.2     <u>Name</u>.  The name of the Partnership shall be "Sterling Capital Partners, L.P." or such other name or names as the General Partner may designate from time to time. The General Partner shall promptly notify each Limited Partner in writing of any change in the Partnership's name.

1.3     <u>Purpose</u>.  The Partnership is organized for the principal purposes of (i) investing in securities of the kind and nature described in the Partnership's confidential Private Placement Memorandum dated June 2001, as supplemented or amended prior to the date hereof, (ii) managing and supervising such investments, and (iii) engaging in such other activities incidental or ancillary thereto as the General Partner deems necessary or advisable.

1.4     <u>Principal Office</u>.  The General Partner shall maintain a principal office in Northbrook, Illinois, or at such other place or places within the continental United States as the General Partner may from time to time designate. The General Partner shall promptly notify each Limited Partner in writing of any change in the location of its principal office

Sterling LBO PA v47 amend exec copy.doc

"Conflict Parties" has the meaning set forth in Section 6.11(a).

"Continuing Investment Approval" has the meaning set forth in Section 9.2(a), and again in each of Section 9.2(b) and Section 9.2(c), as applicable.

"Cost Basis" with respect to any security means the cost basis thereof as determined in accordance with the Code.

"Cost Contributions" means Capital Contributions that are not Investment Contributions.

"Current Income" means all interest and dividend income (including original issue discount and payment in kind income) from securities held by the Partnership (other than Short-Term Investment Income).

"Defaulting Partner" has the meaning set forth in Section 7.9(a).

"ECI" means (i) income which "is effectively connected with the conduct of a trade or business within the United States" for purposes of Code §§871(b)(1) and 882(a)(1) (disregarding Code §897) and (ii) gains which (A) are treated as income described in clause (i) of this definition under Code §897 and (B) resulted from dispositions of securities of Portfolio Companies which, at the time such securities were acquired by the Partnership, were securities that the General Partner either reasonably believed constituted "United States real property interests" as defined in Code §897(c) or reasonably expected to become United States real property interests during the period the Partnership holds such securities. For the avoidance of doubt, any gain from the disposition of securities by the Partnership that is treated as income described in clause (i) of this definition solely by application of Code §897 shall not constitute ECI (and therefore shall not be taken into account in applying the limitation set forth in Section 6.5) if, at the time the Partnership acquired such securities, the General Partner reasonably believed that such securities were not United States real property interests and would not become United States real property interests during the period the Partnership holds such securities.

"Effective Date" means the Initial Closing Date.

"Electing Contributing Partner" means each Class B Partner who or which (i) has requested in writing that the General Partner provide at least 3 business days' prior written notice with respect to any Interim Contribution to be made by the General Partner or any Affiliated Partner pursuant to Section 3.1(f) so long as the General Partner is otherwise able to provide such notice based upon the timetable applicable to a potential Investment or payment of Partnership Expenses for which such Interim Contribution is being made and (ii) actually funds such Interim Contribution within 3 business days of the receipt of such notice.

"ERISA" means the Employee Retirement Income Security Act of 1974, the related provisions of the Code, and the respective rules and regulations promulgated thereunder, in each case as amended from time to time, and judicial rulings and interpretations thereof.

"ERISA Partner" means, with respect to any determination hereunder, any Limited Partner (i) (A) which is an employee benefit plan which is subject to the provisions of Part 4 of Subtitle B of Title I of ERISA, (B) which is an individual retirement account or annuity described in §408(a) or (b) of the Code, or (C) the assets of which are deemed to be plan assets under the Plan Asset Regulations and (ii) which has notified the General Partner of such status at any time prior to such determination.

FCSL - 000043

"Excess Securities" has the meaning set forth in Section 3.3(d).

"Excluded Limited Partner" means (i) any Conflict Party that is also a Limited Partner and (ii) solely with respect to the Partnership Media or Common Carrier Company covered by a waiver under Section 7.12, each Limited Partner who makes such waiver with the requisite consent of the General Partner.

"Executive Fund" has the meaning set forth in Section 6.14.

"Fair Value Capital Account" means, with respect to each Partner, the amount that would be distributed to such Partner if, on the date as of which such determination is being made, each security owned by the Partnership had been sold at its "value" (determined in accordance with Article X) and the Partnership had been liquidated in accordance with Section 9.4.

"FCC" means the Federal Communications Commission.

"Freely Tradeable Securities" has the meaning set forth in Section 4.1(a).

"Funded Expenses" means each Partnership Expense and Organizational Expense paid by the Partnership (or by the Partners pursuant to Section 5.3) out of Capital Contributions.

"General Partner" means SC Partners, L.P., a Delaware limited partnership, in its capacity as general partner of the Partnership, and any successor general partner of the Partnership.

"Governmental Plan Partner" means, with respect to any determination hereunder, any Partner which is a "governmental plan" (as defined in §3(32) of ERISA) that has notified the General Partner in writing of such status at any time prior to such determination.

"Initial Closing Date" means October 15, 2002.

"Interim Contribution" has the meaning set forth in Section 3.1(f).

"Investment" means any investment made by the Partnership in a Portfolio Company (including, without limitation, follow-on investments and Temporary Investments).

"Investment Company Act" means the Investment Company Act of 1940, as amended, and the rules and regulations promulgated thereunder.

"Investment Contributions" means the Capital Contributions that are used to make an Investment or to pay expenses incurred directly in connection with the making, maintaining or disposing of such Investment.

"Investment Proceeds" means all cash, securities and other property received by the Partnership in respect of any Investment or any portion thereof, and any proceeds thereof (excluding the securities that constitute the Investment except to the extent that they are distributed to the Partners in kind and net of any expenses or taxes imposed on the Partnership in connection with such receipt), but not including Short-Term Investment proceeds received by the Partnership.

"Law Firms" has the meaning set forth in Section 13.5(a).

"Limited Partner Affiliate" has the meaning set forth in Section 7.12(a).

## ARTICLE VI

## GENERAL PARTNER

6.1     Management Authority.

(a)     The management of the Partnership shall be vested exclusively in the General Partner, and the General Partner shall have full control over the business and affairs of the Partnership. The General Partner shall have the power on behalf and in the name of the Partnership to carry out any and all of the objectives and purposes of the Partnership and to perform all acts and enter into and perform all contracts and other undertakings which the General Partner, in its sole discretion, deems necessary or advisable or incidental thereto, including the power to acquire and dispose of any security (including marketable securities).

(b)     All matters concerning (i) the allocation and distribution of net profits, net losses, Investment Proceeds, Short-Term Investment Income, and the return of capital among the Partners, including the taxes thereon, and (ii) accounting procedures and determinations, estimates of the amount of Management Fees payable by any Defaulting Partner or Regulated Partner, tax determinations and elections, determinations as to on whose behalf expenses were incurred and the attribution of fees and expenses to Portfolio Companies, and other determinations not specifically and expressly provided for by the terms of this Agreement, shall be determined by the General Partner in accordance with applicable law, in good faith and in a manner generally consistent with the terms of this Agreement, whose determination shall be final and conclusive as to all the Partners absent manifest error.

(c)     Third parties dealing with the Partnership can rely conclusively upon the General Partner's certification that it is acting on behalf of the Partnership and that its acts are authorized. The General Partner's execution of any agreement on behalf of the Partnership is sufficient to bind the Partnership for all purposes.

6.2     Limitations on Indebtedness and Guarantees.

(a)     The Partnership may incur indebtedness for borrowed money, but only if the General Partner reasonably determines that such indebtedness shall not result in the recognition of UBTI by any Tax Exempt Partner.

(b)     The stated maturity of any indebtedness for borrowed money incurred by the Partnership shall not extend beyond the initial ten year term of the Partnership. The aggregate principal amount of such indebtedness for borrowed money outstanding at any time may not exceed 20% of the Partnership's aggregate Commitments (measured as of the date such indebtedness is incurred). Notwithstanding the foregoing, there is no limitation on the amount of indebtedness which the Partnership may incur in connection with repurchasing any Partnership interest from a Regulated Partner or a Defaulting Partner and any such indebtedness shall not be applied to the limitations set forth in the preceding sentence.

(c)     The Partnership may guarantee only the obligations of Portfolio Companies (and any direct or indirect subsidiaries thereof), and for purposes of Section 6.2(b), the guarantee of a Portfolio Company's obligations shall be treated as Partnership indebtedness.

FCSL - 000045

this Agreement, (b) shall initially review and approve, which approval shall not be unreasonably withheld, the valuation methodology procedures prepared by the General Partner which shall be submitted to the LP Advisory Committee by the General Partner for approval no later than 30 days prior to the date that the first annual financial statements are delivered to the Limited Partners pursuant to Section 11.3(b), (c) shall periodically review the valuations of the Partnership's assets made by the General Partner and (d) shall provide such other advice and counsel as is requested by the General Partner in connection with the Partnership's investments, potential conflicts of interest and other Partnership matters; provided that the General Partner shall retain ultimate responsibility for asset valuations (subject to the provisions of Section 10.3) and for making all decisions relating to the operation and management of the Partnership; including, but not limited to, making all investment decisions. Unless otherwise expressly indicated herein, all LP Advisory Committee approvals, disapprovals, votes, determinations and other actions shall be authorized by a majority of the LP Advisory Committee members pursuant to a meeting or written consent of a majority of the LP Advisory Committee members. Meetings of the LP Advisory Committee members may be conducted in person, telephonically or through the use of other communications equipment by means of which all Persons participating in the meeting can communicate with each other. The General Partner shall be entitled to attend and participate (but not vote) in all LP Advisory Committee meetings. The Partnership shall reimburse each member of the LP Advisory Committee for his or her reasonable out-of-pocket expenses incurred in connection with the proceedings of the LP Advisory Committee. The LP Advisory Committee shall hold a meeting at least once every calendar year, and shall hold a meeting immediately before or immediately following the annual Limited Partner meeting described in Section 11.4.

(b) Neither the members of the LP Advisory Committee, nor the Limited Partners on behalf of whom such members act as representatives, shall owe any duties (fiduciary or otherwise) to any other Limited Partner in respect of the activities of the LP Advisory Committee, other than the duty to act in good faith. Neither the Partnership nor the General Partner shall have any obligation of any nature to any Limited Partner for any breach of such LP Advisory Committee member's duty.

ARTICLE IX

DURATION AND TERMINATION

9.1    Duration. Subject to Section 9.3, the Partnership shall terminate and be dissolved on the tenth anniversary of the Effective Date, or such earlier time as determined by the General Partner in its sole discretion; provided that the term of the Partnership may be extended beyond the tenth anniversary by the General Partner in its discretion for three additional one-year periods (but only with the consent of the LP Advisory Committee for the third additional one-year period) to allow for an orderly termination and liquidation of the Partnership's investments.

9.2    Early Termination of the Commitment Period.

(a)    Key Person. The General Partner shall give the Limited Partners and Parallel Fund Limited Partners written notice promptly after either Steven M. Taslitz or Merrick M. Elfman ceases to be active in the Partnership's affairs on the basis contemplated by Section 6.13 for any reason (a "Cessation Event"). For a period beginning on the date immediately following such Cessation Event and ending on the 60th day after the date that the General Partner delivers written notice of such Cessation Event (such period, the "Cessation Period"), the Partnership shall not deliver a Capital Call Notice to fund any further investments, except for follow-on investments and investments pursuant to then existing commitments (collectively, "Pending Investments"), during such Cessation Period without the approval of

AMENDMENT NO. 6 TO THE
AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP
OF EACH OF
STERLING CAPITAL PARTNERS, L.P. AND
STERLING CAPITAL PARTNERS GMBH & CO. KG

Reference is made to the Amended and Restated Agreement of Limited Partnership of Sterling Capital Partners, L.P., a Delaware limited partnership ("SCP I"), dated as of August 11, 2003, as amended (the "SCP I Agreement"), and the Amended and Restated Agreement of Limited Partnership of Sterling Capital Partners GmbH & Co. KG ("SCP I-Germany") dated as of August 11, 2003, as amended (the "SCP I-Germany Agreement" and, together with the SCP I Agreement, the "Partnership Agreement"). Capitalized terms used, but not defined, herein shall have the respective meanings given them in the Partnership Agreement.

WHEREAS, the term of each of SCP I and SCP I-Germany was previously extended until October 15, 2016;

WHEREAS, the undersigned desire to extend the term of SCP I and SCP I-Germany until October 15, 2017; and

WHEREAS, the undersigned wish to amend each Partnership Agreement to reflect the extension of the term of SCP I and SCP I-Germany.

NOW THEREFORE, SC Partners Holdings, L.P., a Delaware limited partnership that is the general partner of SCP I and the managing limited partner of SCP I-Germany, and the undersigned limited partners, which are limited partners of either SCP I or SCP I-Germany, agree as follows:

Section 9.1 of each Partnership Agreement is hereby amended and restated to read in its entirety as follows, with the language in brackets below to read, in the case of SCP I, "General Partner" and "general partner", and, in the case of SCP I-Germany, "Managing Limited Partner" and "managing limited partner", and with the phrase, "or the Partnership Act", and the parenthetical phrase, "(as defined in the Partnership Act)", applicable only to the SCP I Agreement (deleted text is shown as a ~~strikethrough~~ and additional text is shown as <u>double underlined</u>):

9.1     Duration.  Subject to Section 9.3, the Partnership shall terminate and be dissolved on October 15, ~~2016~~<u>2017</u>, or such earlier time as determined by the [General Partner / Managing Limited Partner] in its sole discretion.  Notwithstanding anything else contained in this Agreement or the Partnership Act, the Partnership shall not be dissolved and required to be wound up in connection with an event of withdrawal (as defined in the Partnership Act) of the [General Partner / Managing Limited Partner] if at the time of the occurrence of such event there is at least one remaining [general partner / managing limited partner] of the Partnership that is hereby authorized to and shall carry on the business of the Partnership.

This Amendment shall be governed by and construed in accordance with the internal laws of the State of Delaware with regard to SCP I and the laws of the Federal Republic of Germany with regard to SCP I-Germany.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the undersigned has executed this Amendment as of the 13th day of October, 2016.

        GENERAL PARTNER/MANAGING LIMITED PARTNER

        SC PARTNERS HOLDINGS, L.P.

        By:   STERLING CAPITAL PARTNERS, LLC,
               its general partner

        By:   _____
               Title: Senior Managing Director

[LIMITED PARTNER SIGNATURE PAGES FOLLOW]