

JUL 1 6 2021

Mr. Peter Goplerud  
President and Dean  
Florida Coastal School of Law  
8787 Baypine Road  
Jacksonville, FL 32256

Sent via UPS  
#1Z37X7Y30110298967  
Sent via email to pgoplerud@fcsl.edu

OPE ID: 03374300

Re: Affirmation of Denial of Reinstatement of Participation in the Title IV, HEA Programs

Dear Mr. Goplerud:

This is in response to your submission dated May 24, 2021 ("Response") requesting that the Department of Education ("Department") reverse its May 13, 2021 decision to deny Florida Coastal School of Law's ("FCSL") application for reinstatement to participate as an eligible institution in the student financial assistance programs authorized pursuant to Title IV of the Higher Education Act of 1965, as amended, 20 U.S.C. §§ 1070 et seq. ("Title IV, HEA programs")("Denial"). The Department thoroughly and carefully reviewed the materials you submitted and by this letter advises FCSL that it will not rescind the Denial.

The Denial cited FCSL's failure to meet the standards of financial responsibility set forth at 34 C.F.R. Part 668, Subpart L. After reviewing the consolidated financial statements of InfiLaw Holding, LLC and Subsidiary ("Holding"), which is the sole member of InfiLaw Corporation ("InfiLaw"), owner of FCSL, for the fiscal years ended ("FYE") July 31, 2020 and July 31, 2019, the Department determined that Holding's FYE July 31, 2020 and July 31, 2019 audited financial statements each disclose failing composite scores of -1.0, on a scale of -1.0 (lowest) to 3.0 (highest). FCSL therefore does not meet the composite score standard at 34 C.F.R. § 668.171(b)(1) and as a result cannot meet the general standards of financial responsibility set forth at 34 C.F.R. § 668.171(b).

In the Response, FCSL contends that the Department determined that FCSL does not meet the general standards of financial responsibility based on "the Department's erroneous assessment of FCSL's ability to continue in operations" and Sterling Capital Partner, L.P.'s ("Sterling") "unwillingness" to execute FCSL's program participation agreement ("PPA"). Two distinct reasons related to FCSL's financial condition were provided in the Denial. The first is FCSL's continued significant failure of the financial responsibility standards and the second is that the InfiLaw financial statement audits failed the disclosure standard in 34 C.F.R. § 668.171(h). The Department acknowledges that it mistakenly interpreted the detailed discussion of the financial weaknesses of the company to constitute what would have been the third and fourth consecutive years in which InfiLaw had a going concern disclosure in its audited financial statements. Given the unaltered concerns about FCSL's financial condition and the grave concerns identified about



Mr. Peter Goplerud
Florida Coastal School of Law, OPE ID 03374300
Page 2

FCSL's course of dealing with the Department in an effort to secure a settlement agreement in conjunction with transitioning the institution to nonprofit status, the Department upholds the denial of the reinstatement application for FCSL. Notably, the auditor discussion reinforces the concerns associated with FCSL's failing financial responsibility ratios. Furthermore, given the continued financial weaknesses in the InfiLaw audited financial statements, the Department will conduct a further review that includes obtaining the audit work papers concerning the going concern issue. A more detailed discussion of the reasons for upholding the Denial is provided below.

The Department determined that FCSL did not meet the general standards of financial responsibility at 34 C.F.R. § 668.171(b) because the institution's composite scores of -1.0 failed the composite score standard at 34 C.F.R. § 668.171(b)(1). Second, while the Department recounted the circumstances through which FCSL's prior participation in the Title IV, HEA programs ended, specifically Sterling's refusal to sign FCSL's new PPA, and noted that Sterling's subsequent relinquishment of its ownership was a material change that further supported the decision to deny reinstatement under FSCL's current ownership, this was not a basis upon which the Department determined that FCSL did not meet the general standards of financial responsibility at 34 C.F.R. § 668.171(b). FCSL's assertions regarding the reasons for Sterling's refusal to sign the PPA are irrelevant to the determination that this was a material change.

The Denial also cited FCSL's failure to demonstrate financial responsibility through its inability to provide the services described in its official publications and statements and the administrative resources necessary to comply with Title IV, HEA program requirements. In particular, Schedule 2.22(a) of the March 30, 2021 Asset Purchase Agreement ("March 30, 2021 APA") that FCSL provided to the Department stated that the ABA had, after reviewing the June 30, 2020 Inspection Report of the ABA's March 1-4, 2020 site visit at FCSL[1] and FCSL's response to the report, determined in August of 2020 that it had reason to believe that FCSL was not in compliance with several ABA standards[2], and then had, at its February 2021 meeting, determined that FSCL was in fact not in compliance with eight ABA standards including Standards 310 (determining credit hours awarded for coursework), 402 (sufficient number of full time faculty), 508 (provision of career counseling), 601 (maintenance of a law library consistent with the Standards), 603 (employment of a full time director of the law library) and 604 (sufficiency of the library staffing), and had requested further documentation with regard to FCSL's compliance with other important standards.[3]

In its Response, FCSL attempts to downplay ABA's findings of fact and noncompliance and portrays them as merely part of the "ABA's routine process of annual interim monitoring of approved law schools…" The Department rejects this effort to minimize the significance of the ABA findings by portraying them as a part of a routine review process.

The ABA's conclusions set forth in the February 26, 2021 Decision Letter include the following:

---

[1] The ABA's June 30, 2020 Inspection Report is enclosed as Exhibit A to this letter.
[2] The ABA's August 20, 2020 Decision letter is enclosed as Exhibit B to this letter.
[3] The ABA's February 26, 2021 Decision Letter is enclosed as Exhibit C to this letter.

(a) FSCL is not in compliance with Standard 402 "with respect to the requirement that the Law School have a sufficient number of full-time faculty to enable it to operate in compliance with the Standards and carry out its program of legal education." The ABA found that FCSL had not addressed the ABA's "core concern regarding the adequacy of the size of the faculty. The Dean's Response does not address the concern raised that each faculty member is teaching three to four classes per semester, except to state that only two faculty members in fall 2020 and two in spring 2021 taught or are teaching overloads. Nor does the Dean's Response address the concerns previously raised that there is no Associate Dean of Academic Programs, a faculty member without experience in clinical legal education is directing the externship program, and a legal writing faculty member is serving as Interim Director of the law library." (See Finding of Fact (2), at p. 4 of Exhibit C).

(b) FCSL is not in compliance with Standard 508, "with respect to the requirement that the Law School provide all its students with basic student services, including career counseling, to assist students in making sound career choices and obtaining employment." The ABA stated that "[s]ince shortly before the site visit in March 2020, the Center for Professional Development (CPD) has been staffed by a single person, the Director of Admissions. The Dean's Response reports that a search for a Director of the CPD is underway, with the intent to have the position filled by April 1, 2021… Jobs are posted to a job posting site, with many of the jobs listed by the Law School in the Dean's Response being law clerk and paralegal positions." (See Finding of Fact (3), at pp. 4-5 of Exhibit C).

(c) FCSL is not in compliance with Standard 601(a)(1), "with respect to the requirement that the Law School maintain a law library that provides support through expertise, resources, and services adequate to enable the Law School to carry out its program of legal education, accomplish its mission, and support scholarship and research." The ABA found that "[t]he law library continues to be overseen by an Interim Director who is a legal writing faculty member. She previously reported that she devotes three hours per week to the administration of the library. The Dean's response reports that the Law School is currently conducting a search for a director of the law library. At the time of the site visit, there was no full-time reference librarian and no active reference service hours…The Dean's Response does not address the concern that some reporters and codes have not been updated since 2017 or earlier, and that the library is not subscribing to some electronic services such as HeinOnline and Bloomberg…." (See Finding of Fact (4), at p. 5 of Exhibit C).

(d) FCSL is not in compliance with Standard 603(a) and Interpretation 603-1, "with respect to the requirement that the Law School have a full-time director of the law library whose principal responsibilities are managing the law library and providing information resources in appropriate formats to faculty and students." The ABA found that "[t]he Law School does not have a permanent full-time director of the law library. The Interim Director is a full-time faculty member who also teaches legal writing and doctrinal courses, serves as one of the Academic Program Directors, and is the Mock Trial Faculty Advisor. The Interim Director has a J.D. degree but does not have a degree in library or

**FCSL - 000068**

Mr. Peter Goplerud
Florida Coastal School of Law, OPE ID 03374300
Page 4

    information science or prior experience as a law library administrator. She advised the site team that she only spends about three hours per week administering the library. The Dean's Response reports that the Law School commenced a search for a permanent director in fall 2020, with the goal of appointing a director by July 2021..." (See Finding of Fact (5), at p. 5 of Exhibit C).

(e)   FSL is not in compliance with Standard 604 and Interpretation 604-1, "with respect to the requirement that the law library have a staff sufficient in expertise and number to provide the appropriate library and information resources to the Law School." The ABA found that "the law library does not have a permanent full-time director, and while the Dean's Response reports that the Interim Director is well qualified to provide interim leadership and has performed well in the position, she does not have the credentials or experience necessary for law library administration. In addition to the Interim Director, there is one full-time staff member in the library, who has 20 years of experience at the Law School but whose qualifications are otherwise unspecified..." (See Finding of Fact (6), at pp. 5-6 of Exhibit C).

(f)   FCSL is not in compliance with Standard 310(a) and (b) and Interpretations 310-1 and 310-2 "with respect to the requirement that the Law School shall adopt, publish, and adhere to written policies and procedures for determining the credit hours it awards for coursework..." The ABA found that "[t]he Dean's Response states that the Law School has policies and procedures for determining the credit hours awarded for coursework and that it had such policies and procedures in place and on its website at the time the site team visited the Law School. The Dean's Response goes on to quote the definition of a credit hour in U.S. Department of Education regulation 34 C.F.R. 600.2 and states that is the Law School's policy. However, what is found on the website…is the same document that was attached as Attachment B to the Dean's Response to the site report. As noted in the Council's August 2020 Decision Letter, the minutes detailed in that document do not satisfy the requirements of the Standard. Specifically, the chart shows the requirement per credit hour of a total of 700 minutes of instruction over 13 weeks (11.67 hours) and two hours of out-of-class work per week over that period (26 hours). That total of 37.67 hours of work falls far short of the 42.5 hours required by the Standard. Moreover, no explanation is offered as to the amount of work required for credit to be awarded for academic activities other than classroom courses, nor is any guidance provided as to how faculty should determine whether the out-of-class work in classroom courses meets the required two hours per credit hour for 15 weeks, or the equivalent amount of work over a different amount of time. For all but the "Intersession Courses," there is no mention of a final examination and there is no indication of a policy requiring either a final examination of appropriate length or other academic work to fulfill the required 42.5 hours per credit." (See Finding of Fact (1), at pp. 3-4 of Exhibit C).

Further, the ABA's August 20, 2020 Decision letter includes the following statements in the Findings of Fact:

Finding of Fact (1) – Standard 202(a), (c), and (d).

"[A]t the time of the Council's determination [February 2020 determination of Compliance with Standard 202(a) and (d)] it did not have the information regarding the specific challenges facing the Law School and the current status of its faculty and staff that is detailed in the site report. Particularly, the Law School is operating with a full-time faculty of only seven members, in addition to the Dean. Faculty salaries have been reduced, in-house clinics have been eliminated, the library budget has been severely cut, and the physical space available to the Law School, including its courtrooms, has been or is being reduced. The Law School is operating without an Assistant Dean or permanent Library Director, and the Admissions Director is also serving as the Career Services Director." (See p. 4 of Exhibit B)

Finding of Fact (6) – Standard 402.

"The Law School does not appear to have sufficient full-time faculty to carry out its program of legal education. There are only seven full-time faculty members (excluding the Dean) and 184 J.D. students (as of October 5, 2019). Students expressed a hesitancy to reach out to faculty members who are stretched thin and wearing too many hats. The Law School's self-assessment notes that each faculty member is "serving in multiple roles and teaching three to four classes per semester." The Faculty Committee Roster sets forth six standing committees, with faculty members serving on as many four of these committees. Effective January 2020, there is no Associate Dean of Academic Programs. A faculty member without experience in clinical legal education is directing the externship program. A legal writing faculty member is serving as Interim Director of the law library." (See p. 6 of Exhibit B)

Finding of Fact (8) – Standard 405(a)

"The Law School has lost 26 full time faculty members in the past two years and the current environment at the Law School presents challenges in attracting and retaining a competent faculty. Teaching loads are heavy, with 15-18 credits per appointment year required of Professional Skills faculty members and 10-12 units required of doctrinal faculty, according to the Faculty Handbook. However, six of the seven full-time faculty members reported teaching loads from 18 to 24 units; one reported a teaching load of 12 units but also served as Interim Dean during the fall semester. Faculty members are required to serve on multiple committees. The site report notes that most faculty members shared with the site team that they were "exhausted" and morale was low. Additionally, the lack of clarity about the tenure review process [see Finding of Fact (9)] may also present a challenge to retaining and attracting faculty." (See p. 7 of Exhibit B)

In addition, on July 17, 2020, two of FCSL's remaining professors, Benjamin Priester and Jennifer Reiber, Interim Dean of FCSL from September 2019 through January 2020, and the Academic Dean prior to then, filed suit against FCSL, InfiLaw, and Sterling for common law breach of contract, promissory estoppel and civil theft under the Florida Minimum Wage Act for

damages in excess of $30,000.[4] In the lawsuit, Professors Priester and Reiber stated that in or around January of 2019, the Defendants' administrators approached them, along with other FCSL faculty members, and informed them of their intent to decrease their previously agreed-to and set salaries, contrary to the terms of their employment contracts. The professors further stated that there was neither warning nor prior negotiation, and that the Defendants altered the terms in a "take it or leave it" manner. The lawsuit is still pending, but the circumstances described by the faculty are consistent with the ABA findings.

The ABA's findings of fact and conclusions show the effects of FCSL's dire financial condition on its educational programs and administration. FCSL's failure to demonstrate compliance with its accreditor's standards further supports the Department's denial of the institution's application for reinstatement, given that FCSL cannot execute a PPA conditioned on its compliance with those very standards. See 20 U.S.C. § 1094(a)(21).

The Department also based the Denial upon FCSL's failure to meet the fiduciary standard of conduct with regard to its provision of information to the Department. As stated in the Denial, FCSL has been in contact with the Department for the past several years regarding its aspirations to convert from a proprietary institution to a private non-profit institution and/or be acquired by an existing private non-profit institution; its failure to meet the standards of financial responsibility and consequent requirement that it provide a letter of credit; its desire to enter into a settlement agreement with the Department to, among other things, limit FCSL's exposure to liabilities associated with InfiLaw's prior operations of the Charlotte School of Law (CSL) and Arizona Summit Law School (ASLS); and its application for recertification. Also as stated in the Denial, FCSL has demonstrated through its actions that it cannot be relied upon to deal fairly and transparently with regard to any eligibility issues, changes, or applications, including applications for changes in ownership and control of the institution.

The Department notes that FCSL's lack of fairness and transparency regarding its proposed conversion was first evident during the ABA's review of FCSL's February 1, 2019 Application for a Substantive Change to Convert to Non-Profit Status ("Application"). In FCSL's May 3, 2019 response to the ABA regarding the Application, the institution represented that neither the InfiLaw affiliate with which FCSL had a services agreement at the time, Inspiras of Jacksonville, LLC ("Inspiras"), nor any other InfiLaw affiliate would have a relationship with FCSL following the change in ownership to the PhoenixLaw Foundation ("Foundation"). See pp. 2, 13 of Exhibit I.[5] FCSL also represented that the Foundation would enter into a services agreement with a third party, University Services Corporation ("UniServ") that had no corporate relationship to InfiLaw or its affiliates. See pp. 2, 19 of Exhibit I. FCSL also represented, with regard to its financial resources, that "…InfiLaw expects to relieve the Law School of … $25 million in senior secured debt obligations for which the Law School is also jointly and severally liable. As a result of these efforts, the Foundation will have a clean balance sheet with no debt…" See p. 12 of Exhibit I.

---

[4] The lawsuit is enclosed as Exhibit D.

[5] Exhibit I contains excerpts of 21 pages of interlineated responses FCSL provided to the Fact Finder's report regarding FCSL's application for a major change. The page references above are to the pagination in the PDF document labeled Exhibit I. These responses were included as part of FCSL's May 3, 2019 response to the ABA.

On May 17, 2019, the ABA conducted a hearing regarding FCSL's pending Application and other matters concerning FCSL.[6] During this hearing, Mr. Rick Inatome, InfiLaw's CEO, represented to the ABA that the "investors" had agreed that if the ABA acquiesced in the change to not-for-profit status, they would relieve the school of the senior secured debt obligations. (See pp. 37-38 of Exhibit E). In an apparent answer to the ABA's previously-posed question whether the Foundation had the "freedom to walk away from UniServ" (pp. 71-72 of Exhibit E), Mr. Inatome stated:

> "…the original proposal that the 501(c) [Foundation] has from the independent, not-for-profit service company [UniServ] is that there is a cut clause in it. And it's really – it only has liquidated damages for the economics at any time they want to cut it, any time they can find lower cost services. In the original proposal that they have currently, that they're negotiating back and forth with an independent lawyer, I just wanted to make sure that the proposal has in that – that there is a cut, and the only provision is that the money that was expended to start it and to finance that organization is paid back. But at any time they can find more cost-effective services for any of those services, it's very possible to get out of that at any time, just in the original proposal." (pp. 81-82 of Exhibit E)

Mr. Inatome's statements were arguably misleading when describing the transaction as one that would relieve FCSL of the senior secured debt obligations, and did not convey the magnitude of debt that FCSL would ultimately be responsible for should it find more cost-effective services -- liquidated damages to the tune of $25 million. At the end of the hearing, then-Academic Dean Reiber requested that the ABA grant acquiescence for FCSL to move from a for-profit entity to a nonprofit. (p. 87 of Exhibit E)

However, rather than approve the Application, the ABA issued a Decision Letter on June 12, 2019 in which it deferred its decision, stating that FCSL had not yet demonstrated that the change would not detract from its ability to remain in compliance with the standards. (p. 29). The ABA found that FCSL had "…not provided sufficient evidence concerning the proposed transactions between it and the entities with which it must contract to effectuate nonprofit status and obtain needed services and capital." (Conclusion (2), p. 29). The ABA requested that FCSL provide a written report by July 1, 2019, for the ABA's consideration at its August 22-24, 2019 meeting. The ABA required FCSL to include, among other things:

> (a) "Updated information, including copies of all pertinent documents, regarding cancellation or other re-negotiation of the debt owed by or to the Law School with the other entities including, but not limited to, InfiLaw, involved with the conversion by the Law School to non-profit status…
>
> (c) Copies of all agreements between the Law School and Inspiras including, but not limited to, service agreements between the Law School and Inspiras detailing the specific

---

[6] A copy of the transcript is enclosed as Exhibit E to this letter.

services to be provided, the costs of the services and any obligations by the parties, including rights to terminate the agreements.

(d) Copies of all executed or proposed agreements between the Law School and UniServ including, but not limited to, service agreements between the Law School and UniServ detailing any services to be provided, the costs of the services and any obligations by the parties, including rights to defer payments and terminate the agreements." (pp. 31-32).

FCSL submitted its response to the ABA's June 12, 2019 letter on July 1, 2019. In the response, FCSL represented that:

"…the separation of the Law School from its current parent companies … will relieve it of financial obligations for which it currently is directly liable as a primary obligor and guarantor." (p. 1)

FCSL went on to represent, with regard to the senior secured debt owed to Ares Capital Corporation ("Ares"), that:

"…the amount currently outstanding under the credit facility is approximately $5.9 million. InfiLaw and Ares have reached an agreement in principle to permit FCSL, Inc.'s obligations with respect to the outstanding Ares debt to be assigned to and assumed by [UniServ] contemporaneously with the closing of the transactions contemplated by the APA. As a result, following the non-profit transition, the Law School will not have any obligation to Ares, and Ares will not have any recourse against it." (p. 2)

FCSL further represented, with regard to the "Remaining Senior Secured Debt", that:

"From 2017 to the present, members of the senior management team have extended approximately $19 million in senior secured debt to InfiLaw and its subsidiaries, including FCSL, Inc., to support their operations. As with the Ares senior secured debt, InfiLaw and each of its subsidiaries are jointly and severally liable (as both co-obligors and guarantors) for repayment of the debt. The debtholders have agreed in principle to permit FCSL, Inc's obligations with respect to the remaining senior secured debt to be assigned to and assumed by UniServ contemporaneously with the closing of the transactions contemplated by the APA. As a result, following the non-profit transition, the Law School will not have any obligation to the remaining Senior Secured Debt holders, and they will not have any recourse against it. Attachment D is a copy of the agreement in principle."

The document FCSL provided to the ABA as Attachment D refers to the May 13, 2019 Asset Purchase Agreement (May 13, 2019 APA) between FCSL and the Foundation, the Assignment and Assumption Agreement listed as Exhibit C to the May 13, 2019 APA (which was missing in the material provided to the ABA), and the draft UniServ Agreement as the "Agreements", and states that these Agreements contemplate that the obligations with respect to the Senior Secured Debt will be assigned to and assumed by UniServ in connection with the transfer of the assets and liabilities of FCSL, Inc. to the Foundation and the contemporaneous execution of the

Mr. Peter Goplerud
Florida Coastal School of Law, OPE ID 03374300
Page 9

UniServ Agreement. It is apparent therefore that all three of these agreements (the APA, Assignment and Assumption Agreement, and services agreement) were essential to FCSL's proposed conversion to a private non profit institution.

On September 9, 2019, the ABA issued its Decision Letter [7] with regard to FCSL's Application. The ABA found that, among other things, that:

(a) FCSL had offered no documentary support confirming its representations that InfiLaw and Ares had reached an agreement in principle to permit FCSL's obligations with respect to the outstanding Ares debt of approximately $5.9 million to be assigned to and assumed by UniServ contemporaneously with the closing of the transactions contemplated in the May 13, 2019 APA. (See Finding of Fact (2)(c), p. 3 of Exhibit F).

(b) FCSL had not provided any executed agreement to confirm its representations that the holders of the remaining senior secured debt of $19 million had agreed in principle to permit FCSL's obligations to be assigned to and assumed by UniServ contemporaneously with the closing of the transactions contemplated by the APA, that following the non-profit transition, FCSL would not have any obligation to the senior debt holders, and that the debt holders would not have any recourse against FCSL. (See Finding of Fact (2)(d), p. 3 of Exhibit F)

(c) Although FCSL represented that the UniServ Agreement had been negotiated by the Foundation and its counsel, the UniServ Agreement that FCSL had provided was an unsigned draft. Furthermore, FCSL had not provided documentary support of the terms of the replacement of the Inspiras service agreement. (See Finding of Fact (3), p. 4 of Exhibit F).

(d) The pro forma budget for the fiscal years ending July 31, 2020 through 2023 did not appear to reflect the expense of 35 percent of net tuition and fees that the Foundation would owe to UniServ under the services agreement. The ABA could not therefore determine if the budget submitted demonstrated that FCSL would have sufficient resources to support its program of legal education. (See Finding of Fact (5), p. 5 of Exhibit F).

(e) The May 13, 2019 APA and the unexecuted UniServ Agreement raised the following issues:

(1) The agreements mention several exhibits, but only Exhibit A (Definitions) was provided;
(2) The APA Schedule 1.2(b) fails to mention the Senior Secured Debt as an assumed liability, but it appears from the UniServ agreement that the $25 million Senior Secured Debt will be assumed by the Buyer and immediately transferred to UniServ;

---

[7] The ABA's September 9, 2019 Decision Letter is enclosed as Exhibit F.

> (3) The UniServ Agreement provides that the fees to be paid by FCSL are determined as (a) "Cost" plus (b) 35 percent of net tuition and fees each year. "Cost" includes interest payments on the Senior Secured Debt. It appeared that these payments are not in FCSL's pro forma budget submission. (See Finding of Fact (6), pp. 6-7 of Exhibit F).

The ABA September 9 letter therefore denied FCSL's Application, stating, among other things, that "the submission by the Law School is missing critical elements of some agreements and the unsigned agreements do not bind the parties in a manner that ensures compliance with the Standards." (p. 7, Exhibit F)

On October 15, 2019, FCSL submitted a new Application for a Substantive Change to Convert to Non-Profit Status ("New Application") to the ABA. On November 22, 2019, the ABA conducted a hearing regarding FCSL's New Application.[8] During the session, FCSL represented that it would "greatly benefit" from the services relationship with UniServ because it would be "relieved of outstanding debt obligations and responsibility for the letter of credit that's been posted to the Department of Education." (pp. 8-9 of Exhibit G).

During the hearing, the ABA established that:

> (a) The shareholders and leadership of InfiLaw had determined that it was in their strategic interest to exit from for-profit education (p. 23 of Exhibit G);
>
> (b) Despite its request that FCSL provide all exhibits to the May 13, 2019 APA, FCSL still had provided only Exhibit A (pp. 13-14 of Exhibit G);
>
> (c) The "costs" charged to FCSL though the UniServ Agreement would include 7 percent interest on the senior secured debt of $19.3 million and 12 percent interest on the letter of credit debt of $4.5 million, so FCSL is paying interest on the debt (p. 21 of Exhibit G);
>
> (d) The service fee due UniServ includes "costs" plus an additional 40 percent of the "costs", and the additional 40 percent will go to pay the $24.7 million senior secure debt owed by InfiLaw and Holding (p. 21 of Exhibit G);
>
> (e) The UniServ Agreement also provides that any amount by which FCSL's annual operating surplus exceeds the operating surplus set forth in the annual operating plan will be swept back to UniServ to pay the $25 million senior secured debt (p. 26 of Exhibit G);
>
> (f) The liquidated damages clause that applies if FCSL disavows the UniServ agreement includes any unpaid portions of the $24.7 million senior secured debt, such that the liquidated damages will start at $24.7 million (pp. 21-22 of Exhibit G);

---

[8] The Transcript of the ABA's November 22, 2019 hearing is enclosed as Exhibit G to this letter.

    (g) Although FCSL represented to ABA, both orally and in writing, that the institution would be "free of the challenges of the previously existing debt obligations" after the conversion, UniServ was in fact going to be used to collect the senior secured debt of $24.7 million owed by InfiLaw and Holding through the services fee FCSL paid to UniServ (p. 20 of Exhibit G);

    (h) The arrangement between InfiLaw, UniServ, the Foundation, and FCSL resulted in FCSL being the sole entity liable for the senior secured debts (p. 20 of Exhibit G);

    (i) Although only 2 to 3 million of the $24.7 million senior secured debt owed by InfiLaw and Holding was related to FCSL, with the rest related to the closing of CSL and ASLS, the debt would be paid off by the revenue taken from FCSL (p. 21 of Exhibit G); and

    (j) At the point where FCSL would have paid off the debt service, the UniServ agreement still required FCSL to pay UniServ cost plus 40 percent (p. 40 of Exhibit G).

On December 12, 2019, the ABA issued its Decision Letter[9] regarding FCSL's New Application. The ABA found that, among other things, that:

    (a) UniServ would serve as a vehicle to receive FCSL revenue to pay off the debts of InfiLaw and Holding in the amount of $24.8 million (Finding of Fact (3), pp. 2-3 of Exhibit H).

    (b) "UniServ will assume the liability for the senior secured debt of $24.8 million plus the obligation for the $5.7 million Letter of Credit as required by the U.S. Department of Education (the "ED"). The Law School will be the sole entity generating revenue to pay this debt through its agreement with UniServ. Most of the combined $24.8 million debt is due to the operations of Charlotte School of Law and Arizona Summit Law School. The Law School estimates that approximately two to three million dollars of the combined debt can be attributed to Florida Coastal School of Law." (Finding of Fact (4)(b), p. 3 of Exhibit H).

    (c) "The Law School is obligated to pay the costs of UniServ's services plus a service fee equal to 40 percent of the costs pursuant to Section 1.7(b)(2) of the service agreement. Included among the costs in that agreement are interest payments at a rate of seven percent of the outstanding balance of the Senior Secured Debt and scheduled payments to be made by UniServ under the operating plan, including 12 percent interest with respect to the outstanding balance of the ED Letter of Credit. There is no draft of an operating plan at this time. The Law School is still required to pay the costs plus 40 percent once the debt has been fully paid." (Finding of Fact (4)(c), p. 3 of Exhibit H).

---

[9] The ABA's December 12, 2019 Decision Letter is enclosed as Exhibit H to this letter.

 (d) "Page two of the Law School's Application memorandum states that the Law School will be "free of the challenges of previously existing debt obligations." However, as indicated above, the proposed conversion to a non-profit and the proposed services agreement are designed to assure that the Law School revenue is available to pay off those debt obligations…" (Finding of Fact (4)(e), p. 3 of Exhibit H).

 (e) "The missing exhibits to the Asset Purchase Agreement cited in the August Council decision letter have not been provided by the Law School." (Finding of Fact (7), p. 4 of Exhibit H).

 (f) "…The Law School has not indicated that it has sufficient reserves to cover deficits. Further, Section 5.2(g) of the [UniServ] services agreement provides, "[i]n the event the School has more than the annual Operating Surplus as set forth in the School Operating Plan, the School shall pay to UniServ that amount by which the annual Operating Surplus exceeds the Operating Surplus as set forth in the annual Operating Plan at the end of each fiscal year." (Finding of Fact (11), p. 6 of Exhibit H).

The ABA therefore denied FCSL's New Application, stating once more that FCSL's submission was missing critical information. (p. 7 of Exhibit H)

In May and June of 2019, while the ABA was reviewing the initial proposal to move FCSL into a nonprofit entity, FCSL requested an abbreviated pre-acquisition review by the Department regarding its proposed acquisition by the Foundation. FCSL also approached the Department around that same time with regard to entering into a settlement agreement that would limit the exposure of FCSL to liabilities associated with CSL and ASLS, which FCSL represented was necessary in order for the acquisition to proceed. The Department ultimately terminated these settlement discussions in September of 2020. FCSL never disclosed to the Department that the proposed transaction included a contractual arrangement with a servicing entity that was designed to capture significant portions of the then-nonprofit law school's revenue to pay InfiLaw and Holding's senior secured debt of $24.8 million, most of which was associated with CSL and ASLS. The Department would have considered such an arrangement to be a deal breaker, had it known about it, not only with regard to approval of the conversion to non-profit status tied to the servicing arrangement or "liquidated damages", but also with regard to the proposed settlement agreement to insulate FCSL from the closed law school program liabilities. FCSL's failure to disclose to the Department the true nature and provisions of the proposed transaction during these discussions was misleading to the point of violating its fiduciary duty to the Department.

The Department's May 13 Denial noted that other items were missing that were identified in the March 30, 2021 APA. The Department noted as an example that Exhibit D, which was to list all contracts to be assumed by the purchaser, was blank, yet the "Affiliated Transactions" schedule referenced the Inspiras Agreement. The March 30, 2021 APA also omitted other material information. For example, Section 1.2 referenced Schedules 1.2(b)(i),(ii), and (iii), and 1.2(c), none of which mention the senior secured debt as either an assumed or excluded liability, nor was the senior secured debt referenced in the Bill of Sale, Assignment, and Assumption Agreement attached as Exhibit B to the March 30, 2021 APA. The Department stated in the

Denial that as a fiduciary, it was incumbent upon FCSL to provide complete contracts and documents to the Department related to the proposed settlement and FCSL conversion to nonprofit.

The extent to which relevant information was not provided becomes apparent when examining the information that the ABA established, after requesting and reviewing specific documentation, and then carefully and incisively questioning FCSL and InfiLaw officials during hearings on the record. The proposed conversion to non-profit status was defined by at least three agreements: the Asset Purchase Agreement; the Assumption and Assignment Agreements regarding the senior secured debts; and the Service Agreement. Although the disposition of the senior secured debt was of paramount importance to FCSL and InfiLaw, FSCL did not, in March of 2021, advise the Department of this issue nor disclose what agreement, if any, it had reached with Campbellsville University ("Campbellsville") regarding this debt, nor did FCSL address whether InfiLaw would continue its relationship with FCSL after the transition through the Inspiras Agreement. FCSL represented in its Response that the transaction with Campbellsville did not contemplate a service agreement with an affiliate of InfiLaw, but failed to disclose whether FCSL would be required to use a new services agreement to pay InfiLaw's senior secured debt after the transition to non-profit status or otherwise become liable for those "liquidated damages" that were brought to light under questioning from the ABA.

In its May 24 Response, FCSL represents that if the transaction with Campbellsville were completed, FCSL and Campbellsville would at that time provide all of the final documentation and details to the Department as part of the change of control approval process. However, the ABA's June 12, 2019, September 9, 2019 and December 12, 2019 Decision Letters show that FCSL never provided the ABA with the complete Asset Purchase Agreement including all exhibits, nor did it provide other critical information that the ABA had requested. Further, FCSL did not, when it requested its pre-acquisition review in June of 2019, disclose to the Department that the draft UniServ Agreement was the device through which InfiLaw would use FSCL revenue to satisfy InfiLaw's senior secured debt, most of which was attributable to CSL and ASLS, and which InfiLaw owed to members of the "senior management team." These machinations were material to the overall arrangement FCSL wanted to obtain from the Department. FCSL was under a fiduciary duty at all times to provide complete contracts and documents to the Department and to disclose all aspects of its proposed transactions that were related to the proposed settlement agreement and FCSL's conversion to non-profit status, but particularly so in March of 2021 when it was requesting that the Department extend its participation in the Title IV, HEA programs.

With regard to Sterling's waiver of its voting and other rights, although FCSL in its Response seeks to minimize its delay in providing the Department with documentation the Department had requested, that information was needed promptly to determine whether the change affected the institution's Title IV, HEA participation. FCSL's delay disclosing this material change constituted a further erosion of the fiduciary duty owed to the Department.

The Department also noted in the Denial that FCSL had not apprised the Department of developments and issues with regard to its ABA accreditation. In particular, subsequent to August of 2020, FCSL sent letters and then emails to the Department, first urging the

FCSL - 000078

Department to accept FCSL's still-pending settlement offer, then requesting alternatives to having Sterling sign FCSL's new PPA, and later regarding the imminent end of FCSL's participation in the Title IV, HEA programs. These communications used FCSL's purported compliance with ABA standards and requirements as a reason for the Department to approve the institution's continued participation in the Title IV, HEA programs.

In particular, in letters dated October 20, 2020 and November 24, 2020, FCSL/InfiLaw assured the Department that FCSL was "fully accredited" by the ABA and "not under any ABA sanctions." In an email to the Department dated January 15, 2021, FCSL then stated, "We are in full compliance with the ABA standards, and are meeting the ABA's more stringent bar pass rates." In an email dated March 26, 2021, FCSL continued that "[t]erminating Title IV eligibility and effectively forcing the closure of the school – a school in compliance with ABA requirements including the new, stringent requirements regarding bar passage – over this new requirement would displace many students, faculty and staff."

Given these statements, the Department was taken aback when it learned about FCSL's multiple deficiencies noted by the ABA through the summary contained in Schedule 2.22(a) of the March 30, 2021 APA, a 143-page document. FCSL apparently intended for the Department to rely on its asserted compliance with ABA standards in making decisions regarding the institution's Title IV participation, and as a fiduciary it should have fully and completely disclosed its ongoing accreditation issues. FCSL's assertion on March 26, 2021 that it was in compliance with the ABA's standards, when the ABA had noted multiple significant deficiencies, was a statement that had the likelihood or tendency to mislead the Department in its review of the pending recertification and proposed transactions. It is clear that FCSL intended the Department to rely on the statement in deciding whether to allow FCSL's PPA to continue. Under these circumstances, this constituted a substantial misrepresentation as defined in 34 C.F.R. § 668.71.

The materiality and relevance of the ABA's findings to FSCL's financial condition and eligibility for continued participation in the Title IV, HEA programs are evidenced by the fact that FCSL disclosed all of these facts to Campbellsville pursuant to the March 30, 2021 APA. Further, FCSL knew full well that the Department would consider compliance with ABA standards to be material with regard to the institution's continued participation in the Title IV, HEA programs, given that the Department's December 19, 2016 denial of CSL's application for recertification, and January 18, 2017 affirmation of that denial, were based in part on the ABA's determination that CSL was not in compliance with ABA standards, and the Department's determination that CSL was therefore not meeting the requirements established by its accreditor, in violation of 20 U.S.C. § 1094(a)(21).

FCSL argues that its statements that it was fully accredited by the ABA and not under any sanctions were factually accurate. However, FCSL's March 26, 2021 statement that the institution was in compliance with the ABA's standards was not accurate, regardless of whether FCSL was fully accredited. Asserting that FCSL was fully accredited and in compliance with ABA standards, was misleading and created a false impression that there were no significant issues of concern to the ABA. FCSL's current statement on its website that it is "fully approved" by the ABA is similarly misleading because it has the likelihood or tendency to deceive current students, prospective students, and the public into thinking that FCSL is in compliance with

Mr. Peter Goplerud
Florida Coastal School of Law, OPE ID 03374300
Page 15

ABA standards when the ABA has determined, as described above, that FCSL is not in compliance with multiple standards.

The Department's Denial was also based on FCSL's failure to meet the standards of participation at 34 C.F.R. § 668.16, citing in general FCSL's failure to inform the Department of the ABA's reviews and actions and of significant events regarding its ownership structure, even though they were material to decisions pending before the Department. The Department did not rely on the descriptions in Schedule 2.22(a) of the March 30, 2021 APA to determine that FCSL lacked administrative capability, and FCSL's claims in its Response in this regard are specious and will not be addressed.

As explained above, neither the information in your request nor the arguments made in support of that submission changes my decision to deny reinstatement to FCSL. Consequently, the denial now constitutes a final agency decision.

Sincerely,

*Susan D. Crim*

Susan D. Crim
Director
Administrative Actions and Appeals Service Group

cc: Steven M. Gombos, Gombos Leyton, PC, via sgombos@glpclaw.com
William B. Adams, Jr., Managing Director, Accreditation and Legal Education,
   American Bar Association, via William.adams@americanbar.org
Sam Ferguson, Director, Commission for Independent Education, Florida Department of
   Education, via sam.ferguson@fldoe.org
Department of Defense, via osd.pentagon.ousd-p-r.mbx.vol-edu-compliance@mail.mil
Department of Veteran Affairs, via INCOMING.VBAVACO@va.gov
Consumer Financial Protection Bureau, via CFPB_ENF_Students@cfpb.gov