

Steven M. Gombos

703-934-9831 Direct
sgombos@glpclaw.com

# GOMBOS | LEYTON PC

ATTORNEYS

11350 Random Hills Road | Suite 400 | Fairfax, Virginia 22030
703.934.2660 Main | 703.934.9840 Fax | www.glpclaw.com

May 24, 2021

**Via Priority Overnight – Federal Express**

Susan D. Crim, Director
Administrative Actions and Appeals Service Group
U.S. Department of Education
Federal Student Aid
830 First Street, NE (UCP-3, Room 84F2)
Washington, DC 20002-8019

Re:   **Department's Denial of Florida Coastal School of Law**

Dear Ms. Crim:

    This firm represents Florida Coastal School of Law ("FCSL") with regard to regulatory matters. We are in receipt of your letter dated May 13, 2021 which informed FCSL that the Department had denied its application for reinstatement of participation in Title IV programs ("Decision"). The Decision invites FCSL to provide evidence it may have to dispute the Department's findings and demonstrate their inaccuracy. Accordingly, we submit the following evidence and arguments in support of FCSL's request for reconsideration of the Decision and approval of FCSL's application for reinstatement.

    **1.   The Department Erred Because FCSL Can Meet the Financial Responsibility Standards Under the Letter of Credit Alternative.**

    The Department's determination that FCSL does not meet the general standards of financial responsibility applicable to a Title IV program participant is primarily based on two factual findings: 1) the Department's erroneous assessment of FCSL's ability to continue in operations; and 2) the unwillingness of a former owner to execute the FCSL's Provisional Program Participation Agreement ("PPPA"). In the first instance, the Department misconstrues the audit opinion of Almich & Associates ("Almich"). In the second, it fails to correctly interpret the limited partnership agreement governing the investment made by Sterling Capital Partners L.P. ("Sterling"). Due to these errors, the Department concluded that FCSL could not qualify under the Letter of Credit Alternative in 34 C.F.R. § 668.175. Because FCSL can meet the requirements of the Letter of Credit Alternative, the Department should reverse its determination that FCSL is not financially responsible.

    A.   **The Department Misinterprets the Audited Financial Statement It Reviewed, Ignores Relevant Evidence of FCSL's Condition, and Misapplies its own Regulations.**

    The Decision indicates that the Department reviewed the audited consolidated financial statements of InfiLaw Holding, LLC and Subsidiary ("Holding"), which is the

**FCSL - 000090**

Susan D. Crim, Director
May 24, 2021
Page 2

ultimate parent company of FCSL. Florida Coastal School of Law, Inc. ("FSI") directly owns and operates FCSL. Holding's consolidated financial statements reflect losses from two institutions no longer in operation and do not depict an accurate representation of FCSL's financial condition. Notably, the Department also fails to adjust the losses and other dollar amounts referenced in the Decision for the impacts of the discontinued operations which are excluded from the composite score calculation pursuant to 34 C.F.R. Part 668, Subpt. L. App. A.

Further, the Department ignored the financial information relevant to FCSL's financial condition and ability to continue in operation. Instead, the Department relied on Holding's audited financial statements. FCSL submitted FSI's audited financial statements for fiscal year 2020 ("FY2020"). See **Exhibit A**. (FCSL Financial Statements). FSI's financial statements reflect the operations of FCSL on a standalone basis. A fair review of FSI's financial statements exposes the Department's error of attributing to FCSL the dire financial condition described in the Decision.

The Department's reliance on 34 C.F.R. 668.171(h) in the Decision is also misplaced. Subsection (h) only applies if the auditor's opinion is adverse, qualified, or disclaimed ("Modified"), or when the notes to the financial statements indicate the institution cannot continue as a going concern. The Department asserts that Holding's audited financial statements constitute Almich's opinion that there is substantial doubt concerning FCSL's ability to continue as a going concern. But that is not what Almich stated in the audit opinion or in the notes to either Holding's or FSI's audited financial statements for FY2020.

34 C.F.R. 668.17(h) should be read consistently with the Auditing Standards (as defined below) pertaining to audit opinions with a going concern qualification because subsection (h) is only applicable if the audit opinion is Modified. The applicable Auditing Standards and GAAP accounting principles require a Modified opinion when an auditor has substantial doubt as to the ability of the business being audited to continue as a going concern. To avoid mistakes like the Department makes in the Decision, the Auditing Standards also specify the terminology to be used and the form in which the going concern qualifier should be presented, whether it is done in the audit report, or in the notes to the audited financial statements.

Per the Auditing Standards, an audit report must be provided with the audited financial statements submitted to the Department. Therefore, any going concern qualification contained in an audit to be submitted to the Department would be stated in the auditor's **report** instead of in **notes**. To reiterate, Almich's report in the FY2020 audit did not contain a Modified opinion expressing doubt that FCSL could continue as a going concern.

Furthermore, the note to Holding's financial statements referenced in the Decision is not presented in the form required for Almich to express a Modified opinion due to a substantial doubt about FCSL's ability to continue in business. The opinion actually expressed by Almich in Holding's audit report is that the financial statement presented fairly, in all material respects, Holding's and FSI's financial position as of July 31, 2020 in accordance with GAAP. Almich simply could not have



**FCSL - 000091**

Susan D. Crim, Director
May 24, 2021
Page 3

issued such an opinion if Almich had substantial doubt about FCSL's ability to continue as a going concern.

It is beyond dispute that the Department requires audited financial statements submitted for all Title IV participating institutions to be prepared according to GAAP. But it also requires the auditor's report to be prepared in accordance with Generally Accepted Government Auditing Standards ("GAGAS"). See, 34 C.F.R. § 668.23(d)(1); 2016 Proprietary School Audit Guide, p. 32. GAGAS incorporates by reference the American Institute of Certified Public Accountants ("AICPA") Standards and Statements on Auditing Standards ("SAS"). The applicability of the Auditing Standards controls when and where a modified opinion must be stated in an audit provided to the Department. These standards require the auditor opinion to be in the report as opposed to the notes. Accordingly, the Department's reliance on the notes is misplaced and cannot support the conclusion reached by the Department. OMB Circular A-133, GAGAS, and SAS auditing standards are collectively referred to as "Auditing Standards".

This conclusion is further supported by AICPA Standards.

Attached as **Exhibits B** and **C** are the AICPA Clarification Statements AU-C-705 ("Modification of Opinion in Independent Auditor's Report") and AU-C-706, ("Emphasis of Matter paragraph in Auditor's Report"). Clarification Statement AU-C-705 defines "Modified opinion" and requires that a Modified opinion be identified by a heading which identifies the type of Modified opinion being issued and include a discussion of the basis for the Modified opinion. (See paragraphs .06, .07 (page B-1), .08 - .10 (page B-2), .17 - .28 (pages B-4 and B-5)).

Clarification Statement AU-C-706 indicates when an emphasis matter paragraph should be included in the Auditor's Report and that the Emphasis of Matter paragraph **does not** modify the audit opinion. (See paragraph A7) (page A-6).

Attached as **Exhibit D** is the AICPA Clarification Statement AU-C-570 ("Audit Standard, Auditor's Consideration of an Entity's Ability to Continue as a Going Concern"). This Clarification Statement explains how an auditor is to determine and report the existence of substantial doubt about the ability of a business to continue as a going concern. According to AU-C-570, when the auditor issues a Modified opinion in the audit report, the auditor must do so with a section entitled "Substantial Doubt About the Entity's Ability to Continue as a Going Concern". If, however, the basis for the concern is explained in the notes to the financial statement, those notes must be cross referenced in a section of the report titled "Substantial Doubt". (See paragraphs .24 - .26) (page D-6).

        B.    <u>The Department Previously Acknowledged that FCSL's Status as a Going Concern was not in Doubt.</u>

Contrary to the FY2020 and 2019, audits, Holding's FY2019 FY2018 financial statements contained a Modified opinion based upon Almich's substantial doubt about the ability of Holding's subsidiaries to continue as a going concern. This relates solely to the non-FCSL subsidiaries. This relates to the non-FCSL subsidiaries. A comparison of Almich's 2018 audit report (prior to the closure of two



**FCSL - 000092**

Susan D. Crim, Director
May 24, 2021
Page 4

affiliated institutions) with Almich's 2020 audit report (after the closure of two affiliated institutions) aptly demonstrates that Almich did not express an opinion of substantial doubt about FCSL's ability to continue as a going concern.

The Department has previously recognized that fact. In its July 18, 2019 composite score calculation letter to FCSL, the Department highlighted the going concern qualification in Almich's FY2018 audit report. But the composite score calculation letter it sent to FCSL with respect to the fiscal year 2019 does not mention a going concern qualifier. The FY2020 audit report and notes to Holding's audited financial statements are substantially the same as the audit report accompanying the fiscal year 2019 Audited Financial Statements. The Department did not consider the audit to contain an expression of substantial doubt as to FCSL's ability to continue as a going concern after it reviewed the FY2019 audited financial statements. It should not do so now.

        C.    <u>The Department Erroneously Interprets Notes in the Financial Statement to Indicate Substantial Doubt that FCSL can Continue as a Going Concern.</u>

The Auditing Standards referenced above make it crystal clear that when an auditor makes an expression of substantial doubt that an institution can continue as a going concern, that expression must be direct and notorious. Contrary to the Department's findings in the Decision, nothing in Note 1 or Note 11 to the financial statements in either the FY2019 or FY2020 audits rise to that level. The purpose of Note 1 is to provide information that enables the recipient of the audited financial statements to better understand the financial statements.

In fact, Note 1 contradicts the Department's conclusion that Almich has substantial doubt as to Holding's ability to continue as a going concern. It explains that Almich adhered to the Auditing Standards by considering Holding's ability to continue as a going concern and concluded that it could. The last sentence in Note 1 is merely a restatement of AICPA Clarification Statement AU-C-570 which says at paragraph .08 (page D-1) that the auditor's going concern determination is not a guarantee. Note 11 simply identifies certain facts but renders no opinion on the impact of those matters on Holding's ability to continue as a going concern.

Nevertheless, the Department's clearly erroneous interpretation of Notes 1 and 11 caused it to consider whether the conditions prompting the supposed "substantial doubt" had been alleviated. Decision at p. 2. The Department concluded they were not. But this step was unnecessary, because the auditor had never opined as to any substantial doubt in the first place.

In addition to being unnecessary, the Department's analysis was also wrong. The primary reasons for the substantial losses and working capital deficits the Department relied upon to support its decision that the non-existent "substantial doubt" had not been alleviated were the result of discontinued operations. Therefore, they were conditions that had been alleviated over time, because Holdings had already endured the pain of winding down and closing Arizona Summit Law School and Charlotte School of Law, affiliated schools which the Department admits had closed in 2018. Decision at p. 2.



**FCSL - 000093**

Susan D. Crim, Director
May 24, 2021
Page 5

> D. **FCSL's Financial Condition is Improving, and it has Posted a Qualifying Letter of Credit.**

A more relevant and meaningful indication of FCSL's financial condition is found in the FSI Financial Statements. That audit shows that FCSL had almost three million dollars in positive cash flow in fiscal year 2020. Its net cash position improved by $406,415.00 over the prior year. The actual net operating loss was only $1,494,069.00, not $4,000,000.00. The institution's operating income was $171,860.00 after operating income had been reduced by a noncash charge for depreciation and amortization of goodwill of $1.74 million. This noncash charge was also the reason FCSL had a net operating loss.

FCSL's current financial condition is the one that matters for the purposes of determining the institution's financial capabilities and the associated risk. FCSL's financial condition improved from fiscal year 2019 to fiscal year 2020. FCSL has positive cash flow and operating income. FCSL had a net income of approximately $250,000 if the noncash expenses are excluded from the calculation.

Additionally, the Department is currently the beneficiary of 3 letters of credit ("LOCs") in the amount of $5,681,255. The LOCs equate to approximately 78% of FCSL's Title IV revenue in fiscal year 2020. This far exceeds the 50% threshold required by letter of credit alternative in 34 C.F.R. 668.175(c). The LOCs also exceed the 70% threshold of the prior year Title IV revenues the Department previously indicated would be required for Holding to be considered financially responsible under the letter of credit alternative.

> E. **Sterling's Waivers should not be a Determinative Factor in the Department's Financial Responsibility Analysis.**

The Department apparently considers Sterling's inability to cosign FCSL's PPPA as a repudiation of its obligations. In doing so, the Department ignores the opinion of Sterling's counsel explaining why Sterling was precluded by its limited partnership agreements from executing the PPPA. To address the problem, Sterling relinquished its ownership interest as parent of FCSL. Consequently, the management of FCSL assumed control of the institution.

Management's commitment was not entered into lightly. By any measure, the institution's principals have "skin in the game." Some members of the management group pledged personal assets including their own homes or borrowed from family members to enable FCSL to obtain the letters of credit needed for FCSL to remain in business. Others contributed substantial amounts of cash. In 2020 the management group contributed $4,000,000.00 to FCSL operations. This enabled it to achieve $3,000,000.00 in positive cash flow notwithstanding a loss of over a million dollars. Those that stand to gain financially from FCSL continuing in operation are those that have made a significant personal investment in FCSL during its financially troubled times. They have put their families' resources on the line so that the law school can continue serving its students. The Department should positively acknowledge that level of commitment.



**FCSL - 000094**

Susan D. Crim, Director
May 24, 2021
Page 6

### 2. **FCSL did not Breach its Fiduciary Duties to the Department.**

#### A. FCSL did not Breach its Fiduciary Duties by Failing to Disclose ABA Communications to the Department.

The Decision accuses FCSL of failing to adhere to a fiduciary standard of conduct "with regard to its provision of information to the Department". Decision at p. 6. To support its claim, the Department states that during various interactions it has had with the institution, "FCSL has not kept the Department apprised with developments and issues with regard to its ABA accreditation". *Id.* at p. 6. The Decision goes on to say that FCSL has represented to the Department that it is "fully accredited by the ABA and not under any ABA sanctions". At issue are disclosures FCSL made to Campbellsville University ("Campbellsville") in connection with an Asset Purchase Agreement it was negotiating with the University. **Exhibit E** (Schedule 2.22) to Asset Purchase Agreement).

The disclosure schedule shared with Campbellsville described communications between the ABA and FCSL in which the ABA sought information from FCSL at various times between the end of 2019 and the Spring of 2021 to determine whether the institution was in compliance with the ABA accrediting standards, and if it were not in compliance, what corrective actions were taken or planned so that the institution could come into compliance within a reasonable time. The disclosure also states unequivocally that FCSL is an ABA approved law school, it does not refer to any sanctions imposed by the ABA. FCSL's communications in this regard were truthful. Throughout the time period referenced in the schedule FCSL maintained its fully accredited status and the ABA took no adverse action to imperil the institution's accreditation.

Apparently, the Department believes that FCSL owed it a duty to divulge those communications between the ABA and FCSL described on the schedule. This is surprising, because the Department does not demand other Title IV institutions to share such communications in the normal course of Title IV participation. Instead, the Department requires the disclosure of accrediting agency orders, "such as a show cause order or similar action, that, if not satisfied, could result in the withdrawal, revocation or suspension of institutional accreditation for failing to meet one or more of the agency's standards." 34 C.F.R. § 668.171(f). But these communications did not trigger that requirement because the ABA did not issue a show cause order or any other adverse action that could lead to a suspension or loss of accreditation.

Instead, these communications were merely part of the ABA's routine process of annual interim monitoring of approved law schools in accordance with Rule 5 of the ABA Rules of Procedure. **Exhibit F** (ABA Rule 5). Had the exchange of information between FCSL and the ABA prompted the accrediting commission to take any action to imperil FCSL's accreditation, both FCSL and ABA would have notified the Department. But there was no such escalation in FCSL's accreditation status. ABA never took any action to require FCSL to show cause why its accreditation should not be withdrawn, and FCSL has maintained its status as an approved law school throughout the period at issue. The Department's complaints



**FCSL - 000095**

Susan D. Crim, Director
May 24, 2021
Page 7

regarding the schedule simply cannot sustain a finding that FCSL breached its fiduciary duty.

>   B.  **FCSL did not Breach its Fiduciary Duties Based on the Timing of the Disclosures Regarding Sterling's Waivers.**

Likewise, the Department's comments regarding the waiver by FCSL's former owner Sterling, of certain shareholder rights also fails to reach the level of a breach of fiduciary duty—by a very wide margin. The Decision characterizes Sterling's waivers as change of control events[1] that "were relevant to the ongoing discussions between FCSL and the Department." Decision at p. 5. The Decision does not say that FCSL failed to disclose Sterling's waivers. Instead, the Department concedes that FCSL "notified the Department of these changes on April 24, 2020". *Id.* The Sterling waivers were made on April 22, 2020. *Id.* Thus the Department contends that FCSL breached its fiduciary duty to the Department by failing to give notice of these events less than 48 hours after they occurred. Generally speaking, the Department requires notice of a change of control event "no later than 10 days after the change occurs". 34 C.F.R. § 600.21(a). Because FCSL met that deadline with 8 days to spare, it is hard to fathom how the Department could consider FCSL's conduct to be a breach of fiduciary duty.

The Department attempts to bolster its case by noting that FCSL "did not provide the documentation of the changes (including copies of the waivers) until June 1, 2020, despite the Department's request for that documentation on May 12, 2020." *Id.* This observation in no way helps strengthen the Department's claim that FCSL breached its duties. In fact, it undermines that claim. If FCSL really needed to provide notice of the waivers in under 48 hours, why did the Department wait 18 days after it received notice to request documentation of these corporate actions? And furthermore, why was it problematic for FCSL to also take 18 days to respond with the requested documentation? The Decision fails to answer these questions.

>   C.  **FCSL did not Breach its Fiduciary Duties Based on Documents it Provided for Preacquisition Review of the Campbellsville Transaction.**

The Department also asserts that FCSL withheld "separate agreements and contracts" in connection with the Asset Purchase Agreement ("APA") with Campbellsville. *Id.* The Decision only mentions one such document, an "Exhibit D" which was "represented to be a list of contracts to be assumed by the purchaser." *Id.* The Department observed that in the signed APA it received from FCSL, Exhibit D "is blank". *Id.* Exhibit D does not indicate, as the Department suggests it could, that FCSL sought to conceal the assumption of any contracts between the purchaser and "InfiLaw for the provision of educational services." Decision at p.6. To be clear, the transaction with Campbellsville does not contemplate that InfiLaw or any InfiLaw affiliate will provide services to Campbellsville after the transaction closes. The terms of the transaction are as stated in the signed Asset Purchase Agreement ("APA") provided to the Department on March 30, 2021—Campbellsville will

---

[1] FCSL does not agree or concede that the April 22, 2020 waivers were change of control events.



Susan D. Crim, Director
May 24, 2021
Page 8

purchase FCSL's assets for the consideration of $1.00 in cash and the assumption of specified liabilities.[2] The agreement was provided to help the Department understand that FCSL had a plan to solidify the law school's financial condition and to continue to provide education to its students following Sterling's exit from FCSL's ownership.[3] FCSL did not withhold material information from the Department in the March 30, 2021 communication in which it sent the executed APA.

As with the ABA communications and the Sterling waivers, the Department goes out of its way to characterize a mundane action in a nefarious way. The fact that the transaction is not yet consummated makes all the difference and explains why FCSL neither mislead the Department, nor compromised its oversight of the institution by communicating information about the potential asset sale. If the transaction is completed, FCSL and Campbellsville will again provide all of the final documentation and details to the Department as part of the change of control process. That process allows the Department to obtain answers to any questions about the transaction it may ask, including whether there are any ancillary agreements between Campbellsville and InfiLaw. It is bewildering that the Department would assume FCSL or Campbellsville would conceal any material details in the transaction either in the March 30, 2021 email, or when seeking the Department's ultimate approval of the change. It did not and would not do this, and therefore the Department has wrongfully accused FCSL of breaching its fiduciary duties based its communications regarding the transaction.

### 3. The Department Wrongfully Assumes FCSL Lacks Administrative Capability Based on Accreditation Processes that Are In-progress.

The Decision describes the Department's review of FCSL's website and online catalog which contain the following representations:

> [FCSL] provides practical training provided by experienced full-time faculty, offers a law library that provides students access to an

---

[2] The liabilities to be assumed are "(i) all trade payables of Seller relating to the School that are listed as current liabilities on Schedule 1.2(b)(i), as such Schedule shall be adjusted at Closing to be consistent with the Same Day Balance Sheet to be provided to Buyer pursuant to Section 5. I(h); (ii) all Liabilities under the contracts assumed by Buyer hereunder listed on Schedule 1.2(b)(ii); (iii) any Liabilities of Seller for Indebtedness, but only as to the extent set forth on Schedule 1.2(b)(iii); (iv) all Liabilities of Seller arising or to be performed after the Closing under the Assumed Contracts listed on Schedule 1.2(b)(ii); and (v) the Unearned Tuition of the School as of Closing." See Section 1.2(b) of the APA. The Assumed liabilities set forth in Schedule 1.2(b) of the APA include: Accounts Payable, Accrued Expenses and Prepaid Tuition. Two contract liabilities are also stated on Schedule 1.2(b) which relate to a private loan servicing agreement with CU Direct and a capital lease with Dell Financial Services.

3 See March 30, 2021 email from Peter Goplerud to Michael Frola. In addition to providing the signed APA, Dean Goplerud explains that Sterling Partners "are prepared to provide the Department with additional financial security of approximately $1 million. Given this additional approximately $1 million surety, on top of the $5.6 million letter of credit currently posted on behalf of Florida Coastal, represents almost 100% of the Title IV funds disbursed last year by Florida Coastal." **Exhibit G** (March 30, 2021 Email from P. Goplerud to Mr. Frola).



> expansive collection of information and lawyer-librarians who provide students with access to materials necessary to prepare them for their legal careers, and maintains a Center for Professional Development that provides support for students in all stages of the career planning process.

Decision at p.4. Relying only on the descriptions in Schedule 2.21(a) (discussed above) the Department concludes "FCSL is not providing the instructional, library, and career services that it advertises, nor is it meeting its obligations to correctly determine student eligibility for Title IV, HEA program funds." *Id.* Schedule 2.21(a) provides no basis or evidence to support the Department's conclusion. To our knowledge, the Decision represents the first time the Department has made a determination that a school lacked administrative capability based solely on a summary of findings from an accreditation team site visit report (which is where these findings originate) and not based on any independent fact finding of its own.

Unsurprisingly, the Department is well off base. That FCSL was cited in an ABA visit team summary report for the standards enumerated in the Decision. And the ongoing dialog between the institution and the accrediting commission following the submission of the team summary report does not mean that FCSL no longer has sufficient faculty, no longer operates a law library or has anyone to staff it, no longer provides career services to students and alumni, or fails to properly determine student eligibility for Title IV purposes. Far from it.

For example, the site visit report finding regarding Standard 310 did not find that FCSL fails to determine credit hours properly. That finding was about whether FCSL had a written policy to aid the credit hour determination for the development of new courses. **Exhibit H** (Site Visit Response.). The School's response to finding 402 highlighted the addition of three faculty members and the law school's plan for maintaining sufficient faculty headcount and teaching loads going forward. *Id.* at 5. The response to Standard 508 involved the sudden departure of FCSL's former Director of the Center of Professional Development and noted that an interim Director had been named and provided a description of scheduled events and activities that demonstrated the Career services Department was up and running. *Id.* at 6. FCSL's response to Standard 601 addressed the site visit team's concerns regarding the library acquisition budget and confirmed that the library remained sufficiently supported. *Id.* at 7. Standards 603 and 604 relate to the departure of FCSL's former Director of the Law Library. The institution is currently seeking to fill this vacancy and has allocated additional staff and faculty to assist students with legal research questions and projects on an interim basis. **Exhibit I** (Vacancy announcement Director of Law Library).

FCSL takes each of the citations enumerated in the Decision seriously and has responded or is in the process of responding to the ABA's requests accordingly. Meanwhile the ABA has not initiated any adverse action related to the findings. For good reason, the findings do not approach the level of severity the Department portrays in the Decision, nor do they form a basis for the Department to conclude that FCSL lacks administrative capability.



Susan D. Crim, Director
May 24, 2021
Page 10

### Conclusion.

As argued above the Department has disregarded facts to arrive at a decision which is not justified by FCSL's financial condition nor by its conduct. The Department appears to have done so out of a desire to punish a for-profit institution or its prior owner. Because the former owner is no longer in control of the institution, and FCSL is committed to a transaction with a nonprofit University, the casualties will be FCSL's students and alumni, who will have their legal education and their degrees and career accomplishments diminished by this arbitrary Decision.

Since graduating its first class in 1999, FCSL has prepared 6,071 graduates for careers in the law. As its mission, FCSL "sets itself apart on the basis of its culture, a student outcome-centered orientation, a commitment to professional preparation, educational experience, service to underserved communities, and accountability of the faculty for market-leading student outcomes." FCSL has consistently, including now, had a student population comprised of 40% students of color and 60% female, thus playing a significant role in diversifying the least diverse profession in the country. FCSL's aggregate bar pass results over the last two years outperform its peer institutions in Florida. Results of the February 2021 exam which were released last month show Coastal grads scoring 6 points above the statewide pass rate and ahead of 5 of the 11 Florida law schools. The latest employment data for the law school's class of 2020 indicated 93% employment for the cohort. Every student at FCSL participates in pro bono legal work prior to graduation, which resulted in the law school providing over 1 million hours of service to its community since 2007. FCSL accomplishes this while maintaining a lower total cost of attendance than several of its peer institutions in Florida and maintaining extremely low cohort default rates (FY2017 official: 2.00%; FY2018 draft: 1.3%). This is the true profile of FCSL, the institution portrayed in the Decision is simply not accurate and does not support the Decision.

The Decision to deny reinstatement rests on the Department's conclusions that FCSL is not financially responsible, breached its fiduciary duties, and demonstrated a lack of administrative capability. Even a cursory inspection of the facts the Department relied upon to reach its Decision exposes fatal flaws in all three conclusions. Because of this and the reasons stated above, the Department should rescind its denial and grant reinstatement to FCSL. The Decision is factually deficient and shot through with errors and faulty assumptions. As such, it cannot withstand judicial scrutiny. Although we hope that the Department will promptly rescind the Decision, FCSL is committed to protecting its rights and will seek judicial review of the Decision if compelled to do so. Therefore, the Department should preserve all records and communications related to its Decision to deny reinstatement.

Sincerely,

Steven M. Gombos

cc: P. Goplerud



**FCSL - 000099**