## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

FLORIDA COASTAL SCHOOL
OF LAW, INC.,

       Plaintiff,

                                Case No. 3:21-cv-721-MMH-JBT

vs.

MIGUEL CARDONA, in his official
capacity as Secretary of the U.S.
Department of Education, and the
UNITED STATES DEPARTMENT
OF EDUCATION,

       Defendants.

_____/

## O R D E R

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss (Doc. 33; Motion), filed on September 27, 2021.  In the Motion, Defendants Miguel Cardona, in his official capacity as Secretary of the U.S. Department of Education, and the United States Department of Education (collectively, "the Department"), assert that this case should be dismissed as moot pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure (Rule(s)).  Motion at 2.  In support, the Department attaches a letter sent to Plaintiff Florida Coastal School of Law (FCSL) on August 27, 2021.  See id., Exhibit A: August 27, 2021

Letter (Doc. 33-1).[1]  In the Letter, the Department notified FCSL that it had "determined that Florida Coastal School of Law closed for purposes related to its participation in the federal student aid programs authorized under Title IV of the Higher Education Act of 1965, as amended." Id.  The Department further advised that "an institution loses its Title IV eligibility on the date the institution permanently closes . . . ." Id.  On November 15, 2021, FCSL filed a response in opposition to the Motion. See Response in Opposition to Defendants' Motion to Dismiss (Doc. 38; Response).  FCSL attached an affidavit from its President and Dean, Peter Goplerud, as well as a letter dated June 14, 2019, in which FCSL notified the Department of its intent to participate in an abbreviated preacquistion review. See Response, Exhibit 1: Declaration of C. Peter Goplerud (Doc. 38-1; Goplerud Decl.) & Exhibit 2: Initial Offer for an Abbreviated Preacquistion Review of Florida Coastal School of Law (Doc. 38-2; Initial Offer for Abbreviated Preacquisition Review).

On November 19, 2021, the Department requested leave to file a reply in support of its Motion and represented to the Court that FCSL opposed the request.  See Motion for Leave to File Reply in Support of Defendants' Motion to Dismiss (Doc. 41; Motion for Leave to File a Reply).  However, FCSL failed to

---

[1]     The Department also attaches a proposed order to the Motion in violation of the Local Rules, United States District Court, Middle District of Florida (Local Rule(s)).  Rule 3.01(f) ("NO PROPOSED ORDER. Unless otherwise permitted by these rules, no party may submit a proposed judgment or other order without leave.").  Accordingly, the Court will disregard it.

file a response in opposition, and on December 7, 2021, the Court, having determined a reply was warranted, granted the Department's request.  <u>See</u> Order (Doc. 42).  The Department filed its reply on December 22, 2021.  <u>See</u> Defendants' Reply in Support of Motion to Dismiss (Doc. 44; Reply).[2]  Although the Court initially set a hearing for oral argument on the Motion, after further review the Court determined a hearing was unnecessary.  Accordingly, this matter is ripe for resolution.

## I.   Background

FCSL initiated this action on July 20, 2021, by filing its Verified Complaint for Declaratory and Injunctive Relief (Doc. 1; Complaint).  In the Complaint, FCSL asserts a claim under the Administrative Procedures Act (APA), 5 U.S.C. § 706, challenging the Department's decisions to allow FCSL's Title IV[3] federal student aid eligibility to expire and subsequently to deny FCSL's request for reinstatement.  <u>See</u> Complaint at 53-57.  FCSL additionally

---

[2]    On December 28, 2021, FCSL requested leave to file a surreply.  <u>See</u> Motion for Leave to File a Surreply to Defendants' Motion to Dismiss (Doc. 45; Motion for Surreply).  The Department filed a response in opposition to FCSL's Motion for Surreply on January 11, 2022.  <u>See</u> Defendants' Opposition to Motion for Leave to File Surreply to Motion to Dismiss (Doc. 46).  After due consideration, the Court found a surreply was unnecessary and entered an Order denying FCSL's request.  <u>See</u> Order (Doc. 47) filed on January 13, 2022.

[3]    Through Title IV of the Higher Education Act of 1965 (HEA), 20 U.S.C. § 1070 et seq., Congress created various student financial assistance programs "to assist in making available the benefits of postsecondary education to eligible students . . . ." <u>See</u> 20 U.S.C. § 1070.  The Department administers these programs, <u>id.</u>, and is charged with determining whether institutions of higher education such as FCSL qualify to participate in accordance with various statutory requirements.  20 U.S.C. § 1099c(a).  For ease of reference, the Court will refer to this as FCSL's Title IV eligibility.

filed an Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction and Memorandum of Law (Doc. 5; Motion for Preliminary Injunction) but in a status conference held on July 21, 2021, agreed to proceed only on its request for preliminary injunctive relief.  See Minute Entry (Doc. 15).  At that same status conference, the Court ordered the Department not to take any adverse action against Florida Coastal School of Law pursuant to 34 C.F.R. § 600.40(a)(1) or any other provision based on the cessation of classes between July 31, 2021, and the date that the Court resolved the Motion for Preliminary Injunction.  See id.

After an August 4, 2021 hearing at which the parties argued their respective positions, see Minute Entry (Doc. 27), the Court entered an Order denying FCSL's Motion for Preliminary Injunction.  See Order dated August 9, 2021 (Doc. 29).  Shortly following entry of the Order, the Department issued the August 27, 2021 Letter declaring that due to FCSL having ceased providing instruction in all programs on July 30, 2021, the school was "closed for purposes related to its participation in" Title IV programs.  See August 27, 2021 Letter at 1.  The Department then filed the instant Motion seeking to dismiss this action as moot.

## II.   Standard of Review

A motion to dismiss pursuant to Rule 12(b)(1) is a motion challenging the subject matter jurisdiction of the court.  Jurisdiction may be attacked facially or

factually.  Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003).  In a facial challenge, a court assumes the allegations in the complaint are true and determines whether the complaint sufficiently alleges a basis for subject matter jurisdiction.  Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).  On the other hand, factual attacks "challenge the 'existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'"  Id. (citation omitted).  In considering a factual attack on subject matter jurisdiction, the Court is free to weigh the facts and is not constrained to view them in the light most favorable to the plaintiff.  Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009), cert. denied, 130 S.Ct. 3499 (2010).  However, the Eleventh Circuit has cautioned that if a jurisdictional challenge implicates the merits of the underlying claim, the district court should "find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case."  Morrison, 323 F.3d at 925 (quoting Garcia v. Copenhaver, Bell & Assocs., 104 F.3d 1256, 1261 (11th Cir. 1997)).

## III.   Summary of the Arguments

In the instant Motion, the Department asserts that

[b]ecause [FCSL] has ceased to "provide[] an eligible program of training to prepare students for gainful employment in a recognized occupation," 20 U.S.C. § 1002(b)(1)(A)(i), the school is plainly ineligible to participate in Title IV federal student aid programs. 34

C.F.R. §§ 600.5(a)–(b), 668.8(a)(1); <u>see also</u> 34 C.F.R. §§ 600.40(a)(1)(ii)–(iii).

Motion at 1-2. According to the Department, because FCSL is ineligible for Title IV programs based on its closure, success on the merits of its claim in the instant action can no longer result in FCSL having its Title IV eligibility restored. <u>Id.</u> Motion at 1-2. Thus, the Department contends that this Court cannot provide FCSL with any meaningful relief and the Court should dismiss the action as moot. <u>Id.</u> at 2-3.

FCSL maintains in its Response that the Department's argument improperly assumes that FCSL's injuries can only be redressed by full reinstatement of its Title IV eligibility. Response at 1-2. Instead, FCSL insists that it has a "cognizable interest in obtaining an order vacating the Decisions and remanding the matter to the Department" notwithstanding its eligibility. <u>Id.</u> at 8. FCSL argues that if the Department's decisions regarding its Title IV eligibility are not vacated, FCSL will continue to suffer "practical consequences." <u>Id.</u> Specifically, FCSL asserts that an order vacating the decisions will redress three harms. <u>Id.</u> First, FCSL "has a significant interest in seeking judicial review of the Department's finding that 'FCSL is not providing the instructional, library, and career services that it advertises.'" <u>Id.</u> at 9 (citation omitted). FCSL notes that the Department has promulgated Borrower Defense to Repayment (BDR) regulations that allow students to apply

to the Department for a discharge of their student loans "if, among other things, their institution made misrepresentations about the educational resources that are required for the completion of their program." Id. at 9 (citing 34 C.F.R. 685.206(e)(3)(x); 34 C.F.R. § 668.72(f),(i),(k)). If the Department discharges a student's debt under its BDR regulations, the Department can seek to recover the amount of the discharge from the institution itself. Id. (citing 34 C.F.R. § 685.206(e)(16); 34 C.F.R. § 685.222(e)(7)). According to FCSL, unless the finding that "FCSL [was] not providing the instructional, library, and career services that it advertised" is vacated, "it will serve as a basis to grant BDR discharges, for which FCSL will be held liable." Id. at 9-10.

Second, FCSL contends that it is "exploring the possibility of reinstating the J.D. program under an alternative funding arrangement." Id. at 10 (citation omitted). If FCSL reaches an agreement with an unnamed financial partner, the pair "hope" to offer student funding through private grants and loans. Id. FCSL maintains that the Department's finding that FCSL "breached fiduciary duties and failed to provide educational services" will present obstacles to obtaining approvals of such an arrangement from the ABA and any other applicable regulatory entity. Id. at 11. Further, FCSL contends that the Department will "undoubtedly consider its prior findings . . ." should FCSL reapply for Title IV eligibility. Id. The Department's "widely publicized

findings" additionally will harm FCSL's reputation and relationships with its clientele.  Id.

Third, FCSL contends that "the Department's findings present a clear and present threat of debarment."  Id. at 12.  FCSL notes that the Department has the authority to debar an institution that violates a public agreement "so seriously as to affect the integrity of an agency program."  Id. (citing 2 CFR § 180.800; 2 CFR § 3485.12).  FCSL contends that the Department's finding that FCSL breached its fiduciary duties to the Department "could be used to debar FCSL, its owners, and executives from federal programs."  Id.

In the Reply, the Department argues that FCSL did not assert these claims of collateral consequences anywhere in the Complaint and as such, they are not properly before this Court.  Reply at 1.  Further, the Department contends that FCSL improperly casts specific parts of the Department's analysis as agency actions subject to review.  Id. at 2.  Finally, the Department asserts that the collateral consequences that FCSL complains of in its Response are far too speculative to constitute concrete and tangible harms capable of redress by this Court.  Id.  at 5 - 10.

## IV.   Discussion

Federal courts are courts of limited jurisdiction.  See Kelly v. Harris, 331 F.3d 817, 819 (11th Cir. 2003) (citation omitted).  "Among other limitations, the federal courts' jurisdiction is circumscribed by Article III [of the Constitution]'s

case or controversy requirement." Id. (citations omitted). "Mootness is among the important limitations placed on the power of the federal judiciary and serves long-established notions about the role of unelected courts in our democratic system." Nat'l Advertising Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005). As a result, the court lacks subject matter jurisdiction over moot claims, as any opinion rendered on such a claim would be an impermissible advisory opinion. See id. (citations omitted). The existence of developments in a case subsequent to the initiation of the lawsuit can render an action moot. See Graham v. Butterworth, 5 F.3d 496, 499 (11th Cir. 1993); see also Nat'l Advertising, 402 F.3d at 1332. Indeed, the Eleventh Circuit has recognized that a case becomes "'moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" Graham, 5 F.3d at 499 (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)). "Put another way, '[a] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.'" Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1217 (11th Cir. 2000) (citations omitted).

The Court must determine whether, notwithstanding FCSL's closing, it can still provide FCSL with meaningful relief. In the Complaint, FCSL requests

three types of relief,[4] FCSL seeks: (1) "[e]ntry of a permanent injunction vacating the May 26, 2021 decision requiring FCSL's ownership to assume joint liability as a condition for continued participation in Title IV programs;" (2) "[e]ntry of [] a permanent injunction vacating the Decisions denying FCSL's applications for reinstatement;" and (3) "[e]ntry of a permanent injunction ordering the Department to reinstate FCSL's Title IV eligibility."   See Complaint at 57-58.  The Court views the first two requests for relief (that the Court vacate the Department's decisions regarding FCSL's Title IV eligibility) "as merely a means to the [third] request for relief" (that the Court order the Department to reinstate FCSL's Title IV eligibility).  See Nyaga v. Ashcroft, 323 F.3d 906, 913 (11th Cir. 2003).  If, as the Department asserts, FCSL is no longer eligible to participate in Title IV programs due to its closure, an order vacating the Department's decisions – only to have FCSL's reinstatement denied because FCSL ceased providing an eligible program of training to students – "would not constitute meaningful relief."  See id.  The Eleventh Circuit Court of Appeal's analysis in Nyaga v. Ashcroft, although in the context of an application for a diversity visa, is instructive to the mootness issue here.

In Nyaga, the husband, a resident alien, qualified by random selection for a visa through the United States' diversity visa program.  Id. at 908.  According

---

[4]   FCSL also requested preliminary injunctive relief, but as previously discussed, that request was denied by this Court on August 9, 2021.  See Order (Doc. 29).

to the relevant statute and applicable regulatory provisions promulgated by the U.S. Department of State, those who qualify for the diversity visa program remain eligible to receive a visa only through the end of the fiscal year for which they were selected.  Id. at 908-09.  The husband was selected by lottery for the diversity visa program for fiscal year 1998.  Id. at 909.  He submitted his visa application during the first month of the fiscal year, and his wife submitted a derivative application based on her husband's eligibility for the diversity visa at the same time.  Id.  The Atlanta Division of the Immigration and Naturalization Service (INS) considered their applications complete when it received the couple's processing fees a few months later.  Id.  The INS then sent the husband and wife's fingerprint cards to the FBI, as part of the required background investigation, but took no further action to process their applications before the end of the fiscal year.  Id.  Neither the husband nor his wife received a visa.  Id. at 910.

Almost three years later, INS interviewed the wife but denied her application because it was based on her husband's eligibility for a diversity visa which expired at the end of fiscal year 1998.  Id. at 910.  The couple filed a complaint in district court, invoking the district court's mandamus jurisdiction, 28 U.S.C. § 1361, federal question jurisdiction, 28 U.S.C. § 1331, the Immigration and Nationality Act, 8 U.S.C. § 1329, and the APA seeking to compel INS to process their application for the diversity visa program and grant

them legal permanent resident status.  Id.  The court granted plaintiffs' cross motion for summary judgment and ordered the defendants to adjudicate the husband's visa application as if the fiscal year had not ended.  Id. at 911.  In doing so, the district court acknowledged it could not mandate a certain outcome of that adjudication.  Id.

On appeal, the Eleventh Circuit determined that before addressing the merits of the district court's order, it must consider whether the plaintiffs' claims were moot.  Id. at 912.  In doing so, the court noted that a case must be dismissed as moot if the court can no longer provide "meaningful relief."  Id. at 913 (citing Fla. Ass'n of Rehab. Facilities, 225 F.3d at 1216-17).  As such, for purposes of the mootness analysis, the court framed the issue as follows:

> the question of whether the district court could provide meaningful relief to the Plaintiffs reduces to a single inquiry: would Nyaga be "eligible to receive an immigrant visa" if the INS were to process his application on the merits and conclude that he would otherwise be admissible for legal permanent residence?

Id. at 913-14.  Because the statutes and regulations provided that Nyaga was no longer eligible for a diversity visa as of midnight on the last day of the fiscal year, "the district court could not provide meaningful relief to the Plaintiffs and the court was compelled to dismiss th[e] case as moot."  Id. at 916.

Since the initiation of the instant lawsuit, the Department has issued a letter notifying FCSL of its determination that the law school "has closed" for purposes of its Title IV eligibility.  See August 27, 2021 Letter.  FCSL does not

appear to dispute this fact, and both parties acknowledge that FCSL has ceased providing courses and enrolling new students.  <u>See</u> Response at 6; <u>see also</u> Motion at 2.

A determination of whether this Court can provide meaningful relief under these circumstances requires the Court to review the regulations governing Title IV program eligibility.  Pursuant to 34 C.F.R. § 685.214(a)(2)(i), "[a] school's closure date is the date that the school ceases to provide educational instruction in all programs, as determined by the Secretary."  Further, an institution loses its Title IV eligibility "on the date that . . . the institution or location permanently closes," as well as the date that ". . . [t]he institution or location ceases to provide educational programs for a reason other than a normal vacation period or a natural disaster that directly affects the institution, particular location, or the students of the institution or location."  34 C.F.R. § 600.40(a)(1)(ii)&(ii).  For FCSL to be Title IV eligible as a proprietary institution of higher education, it must ". . . have been in existence for at least two years," among other requirements.  34 C.F.R. § 600.5(a)(7).  An institution is "in existence for two years only if – (i) the institution has been legally authorized to provide, and has provided, a continuous educational program to prepare students for gainful employment in a recognized occupation during the 24 months preceding the date of its eligibility application."  34 C.F.R. § 600.5(b)(1)(i).

Because FCSL stopped providing a continuous educational program as of July 30, 2021, it lost its Title IV program eligibility on that date.  Moreover, because it has not been providing a continuous educational program since that date, FCSL cannot have "been in existence for at least two years" and is not currently eligible to participate in Title IV federal student aid programs.  <u>See id.</u>  Accordingly, because FCSL is no longer eligible to participate in Title IV programs, this Court can no longer provide meaningful relief to FCSL, and the Court is compelled to dismiss the case as moot.

FCSL attempts to salvage its claim by arguing that the Court can still "redress the practical consequences of the Decisions."  However, its contentions in support of this argument are unavailing.  <u>See</u> Response at 8.  FCSL's first argument, that it "has a cognizable legal interest in preventing the Department's use of the Decisions to generate BDR liabilities against the school," is without merit for a number of reasons.  <u>Id.</u> at 9.  As an initial matter, the Court notes that an order vacating the Department's eligibility decisions under the APA would not preclude students from seeking a discharge of their loans on the basis that FCSL mispresented their educational resources.  While FCSL assumes that the Department's findings "will serve as <u>a</u> basis to grant BDR discharges, for which FCSL will be held liable," <u>see id.</u>, an order vacating the Department's decisions will not prevent students from relying on the same facts and circumstances relied on by the Department in making those decisions

to seek discharges of their loans.  See 34 C.F.R. § 685.206(e)(3)(i)-(xi) (providing a nonexclusive list of evidence that a misrepresentation may have occurred). Similarly, such an order would not demonstrate that the Department's findings in that regard were false or otherwise inaccurate; it would simply require the Department to re-examine its findings.  See Stone & Webster Constr., Inc. v. U.S. Dep't of Lab., 684 F.3d 1127, 1137 (11th Cir. 2012) ("It is an established principle of administrative law that an appellate court should not 'intrude upon the domain which Congress has exclusively entrusted to an administrative agency.' Thus, 'the proper course, except in rare circumstances, is to remand [a matter] to [an] agency for additional investigation or explanation.'" (citations omitted)); see also Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) ("The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.").  In addition, the Department's determination that FCSL was not providing the services advertised stemmed from the ABA's findings that FCSL was not in compliance with numerous accreditation standards that related to educational services FCSL was required to provide.  See Complaint, Ex. 14 (Doc. 1-14; Denial Letter) at 2.  The Department's letter affirming its denial of FCSL's reinstatement application outlined a number of factual determinations made by the ABA in its own, February 26, 2021 decision letter.  See Complaint, Ex. 15 (Doc. 1-15; July 16, 2021 Affirmation of Denial) at 2-6.  Those ABA findings may

constitute a source of "BDR liabilities" just as much as, if not more so than, the Department's decision to deny FCSL reinstatement.  As such, if FCSL were to succeed on the merits of its claim[5] and the Court were to vacate the Department's decisions, the Court could not provide FCSL any meaningful relief with regard to its exposure to potential "BDR liabilities."

FCSL additionally contends that the Department's "[f]indings that FCSL breached fiduciary duties and failed to provide educational services" will inhibit FCSL's ability to obtain future approval to offer student funding through private grants and loans as well as afford the Department a basis to debar FCSL and its executives.[6]   Response at 10-11.   FCSL maintains "it is exploring the

---

[5]     The Court discussed in detail the reasons it concluded that FCSL failed to show that it had a substantial likelihood of success on the merits of its claim in its August 9, 2021 Order (Doc. 29).

[6]     In the Response, FCSL argues the merits of its claim that it did not breach its fiduciary duty to the Department.  Despite the Court's findings in its Order denying the Motion for Preliminary Injunction, FCSL maintains that "there is strong reason to believe that the full administrative record will demonstrate that the FCSL did not breach any fiduciary duty." Response at 12.  By way of example, FCSL points to the Department's letter affirming its denial of FCSL's reinstatement in which the Department concluded, "that FCSL 'did not, when it requested its pre-acquisition review in June of 2019, disclose to the Department that the draft UniServ Agreement was the device through which InfiLaw would use FCSL revenue to satisfy InfiLaw's senior secured debt.'"  Affirmation of Denial at 13.  FCSL insists that "the cover letter to its June 2019 pre-acquisition review request expressly explains that very arrangement."  Response at 13. In support, FCSL cites to the letter, attached to its Response, where FCSL disclosed, "Uniserv will assume Florida Coastal's liabilities as a primary obligor and co-guarantor with respect to senior secured debt that was incurred by the institution under current ownership."  Initial Offer for Preacquisition Review at 4.

The language cited by FCSL suggests the "senior secured debt" at issue was incurred by "the institution" that was a part of the potential acquisition, which was FCSL.  The Department's concern was that

> FCSL did not, when it requested its pre-acquisition review in June of 2019, disclose to the Department that the draft Uniserv Agreement was the device

possibility of reinstating the J.D. program" and "FCSL and its potential financial partner hope to offer student funding through private grants and loans." Id. at 10 (emphasis added).  FCSL further asserts that it intends to apply for Title IV eligibility in the future and maintains that the Department will rely on its prior findings in deciding whether to approve FCSL's application. Id. at 11.  With regard to debarment, FCSL asserts that "the Department's findings present a clear and present threat of debarment." Id. at 12 (emphasis added).

As discussed above, an order vacating the Department's decisions would not preclude either the ABA or the Department from relying on the underlying facts of their prior dealings with FCSL in evaluating the institution's future Title IV eligibility, ability to receive private funding, or potential debarment. Indeed, the ABA's findings pose just as much of an obstacle to FCSL as do the Department's.  Further, FCSL's arguments regarding a possible financial deal, potential private funding, future Title IV applications, and the unsubstantiated

---

through which Infilaw would use FCSL revenue to satisfy InfiLaw's senior secured debt, most of which was attributable to [Charlotte School of Law] and [Arizona Summit Law School], and which InfiLaw owed to members of the "senior management team."

Affirmation of Denial at 13 (emphasis added).  FCSL omits this portion of the excerpt in its Response.  FCSL's representation in the Initial Offer for Preacquisition Review does not rebut the Department's finding that FCSL did not disclose aspects of its proposed acquisition, specifically its relation to Charlotte School of Law and Arizona Summit Law School.  Rather, FCSL affirmatively states in the Initial Offer for Preacquisition Review that the senior incurred debt was incurred by "the institution" - FCSL, with no mention of the other two institutions.

threat of debarment are far too speculative to constitute a concrete or tangible injury that is capable of redress by this Court. See Gagliardi v. TJCV Land Tr., 889 F.3d 728, 735 (11th Cir. 2018) ("Here there is nothing but the fear that the challenged conduct may recur in some unstated form at an unknown time and place. We do not have the power to 'advise' potential parties about the lawfulness of potential actions that have not and may never occur."); see also B & B Chem. Co. v. U.S. E.P.A., 806 F.2d 987, 991 (11th Cir. 1986) ("The occurrence of future actions brought by the EPA alleging claims resulting directly from the district court's order is one that is too speculative at this stage to preclude a finding of mootness. From a policy standpoint, we would be opening the floodgates of litigation by allowing this exception to eclipse a finding of mootness on the basis of a purely speculative event.").

FCSL cites several cases in support of its contention that the "mere possibility of adverse collateral consequences" and reputational harm preclude a finding of mootness. See Dailey v. Vought Aircraft Co., 141 F.3d 224, 229 (5th Cir. 1998); see also Ruehling v. Armstrong, No. 8:12-CV-2724-T-35TGW, 2014 WL 12617962, at *3 (M.D. Fla. Nov. 3, 2014); see also Connell v. Shoemaker, 555 F.2d 483 (5th Cir. 1977). None of these are persuasive. The language quoted by FCSL from Dailey originally comes from Umanzor v. Lambert, 782 F.2d 1299, 1301 (5th Cir. 1986), in which the court concluded that a prisoner's release does not moot a habeas petition where

> he could suffer adverse collateral consequences, that is, disabilities or burdens which may flow from [a prisoner's] conviction that give him a substantial stake in the judgment of conviction, one which survives the satisfaction of the imposed sentence.

Id.  The Dailey court relied on that holding in finding that a lawyer who is disbarred and later readmitted to practice nevertheless suffers a real and significant threat of adverse consequences to her law practice and career. Dailey, 141 F.3d at 229.  Similarly, in Ruehling, the plaintiff challenged an emergency order, issued by the Florida Department of Health, that suspended his nursing license.  Id. at *1.  The Department of Health contended that the plaintiff's claims were moot because the emergency suspension order was lifted. Id. at *2.  The plaintiff maintained that he suffered an ongoing injury because the Department of Health refused to remove an online posting that attributed his suspension to a failed drug test.  Id. at *3.  The Court found the online posting was a continuing practical consequence of the suspension, a suspension which the plaintiff alleged violated his procedural due process rights.  Id.  This continuing damage to the plaintiff's "reputation as a nursing professional was sufficient to negate mootness."  Id.

And finally in Connell, the Commanding Officer of Fort Hood imposed sanctions on the plaintiff apartment owner in response to complaints of racial discrimination in housing.   555 F.2d at 485.  The Commanding Officer prohibited military personnel at Fort Hood from entering into leases with the

plaintiff for 180 days.  Id. at 485-86.  The plaintiff filed suit in December 1974, and the Commanding Officer lifted the sanction in January 1975, after the plaintiff assured him there would be no future acts of discrimination.  Id.  The district court thereafter dismissed the action as moot.  Id.  On appeal, the Fifth Circuit found "the continuing practical consequences of the Army's determination of discrimination as sufficient to negate mootness."  Id. at 486.  The plaintiff had interests in various businesses providing goods and services to the area around Fort Hood and held various civic and elective positions in the community.  Id. at 486-87.

The facts in these cases are distinguishable from the facts underlying the instant action.  In the cases cited by FCSL, the plaintiffs were challenging agency determinations that they engaged in wrongdoing – that the attorney violated Rule 11, the nurse failed a drug test, and the apartment owner discriminated against tenants based on their race.  In light of these determinations, plaintiffs were subject to the imposition of sanctions or some other form of punishment.  Because the plaintiffs continued to operate their businesses or work in their careers, the negative implications of the Defendants' determinations could be said to cause ongoing damage to their reputations amongst their colleagues and clients.  Here, it is undisputed that FCSL has closed its doors.  It has no ongoing educational business, and the possibility that

it might at some point attempt to reopen is far too speculative to support a claim of ongoing reputational damage.

Moreover, the decision which FCSL challenges in this action is the Department's determination that at the time of the decisions FCSL did not qualify as an institution eligible to participate in federal student loan programs, not that FCSL engaged in any specific wrongdoing. The Department did not affirmatively punish FCSL in the same way that the plaintiffs in <u>Dailey</u>, <u>Ruehling</u>, and <u>Connell</u> were precluded from operating their business or working in their licensed profession. Rather, FCSL ceased offering classes as a result of the ABA's actions. That the Department's decisions <u>might</u> impact actions that FCSL might take sometime in the future, is not the same concrete, imminent reputational harm contemplated in the cases cited by FCSL.

Here, pursuant to the Title IV program eligibility requirements, FCSL is presently ineligible to participate in Title IV programs. As such, an order remanding this case to the secretary would not restore FCSL's Title IV eligibility. Nor would such an order provide any other meaningful relief. Because the Court is no longer able to provide FCSL with any meaningful relief based upon its claim under the APA, the Complaint is due to be dismissed as moot.

### a. Leave to Amend

At the conclusion of its Response, FCSL includes one sentence seeking leave to amend its Complaint in the event the Court grants the Department's Motion. See Response at 13 ("If the Court grants, the Department's Motion, FCSL respectfully requests leave to amend its Complaint to cure any deficiencies."). However, a request for affirmative relief, such as a request for leave to amend a pleading, is not properly made when simply included in a response to a motion. See Fed. R. Civ. P. 7(b); see also Rosenberg v. Gould, 554 F.3d 962, 965 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.") (quoting Posner v. Essex Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999)).

Moreover, even if it were proper to include this request in the Response, the request is otherwise due to be denied for failure to comply with Local Rules 3.01(a) and 3.01(g), United States District Court, Middle District of Florida (Local Rule(s)). Local Rule 3.01(a) requires a memorandum of legal authority in support of a request from the Court. See Local Rule 3.01(a). Local Rule 3.01(g) requires certification that the moving party has conferred with opposing counsel in a good faith effort to resolve the issue raised by the motion and advising the Court whether opposing counsel agrees to the relief requested. See Local Rule 3.01(g). In addition to these deficiencies under the Local Rules, the

request in the Response also fails to satisfy the requirement that "[a] motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999); see also McGinley v. Fla. Dep't of Highway Safety & Motor Vehicles, 438 F. App'x 754, 757 (11th Cir. 2011) (affirming denial of leave to amend where plaintiff did not set forth the substance of the proposed amendment); United States ex rel. Atkins v. McInteer, 470 F. 3d 1350, 1361–62 (11th Cir. 2006) (same). Thus, the "request" is procedurally improper, subject to denial, and does not preclude dismissal. See McInteer, 470 F.3d at 1359 (holding district court did not abuse discretion in granting dismissal, and thus effectively denying plaintiff's request for leave to amend his complaint, where "the request for leave to amend was included in a memorandum the plaintiff filed in opposition to the defendants' motions to dismiss the complaint, and . . . the plaintiff failed to attach the proposed amendment or set forth the substance of the proposed amendment" such that even assuming the "request was the functional equivalent of a motion," it was properly denied). Regardless, given the Court's determination that the claims raised in this action are moot, any amendment would be futile.

Accordingly, it is

**ORDERED**:

1. Defendants' Motion to Dismiss (Doc. 33) is **GRANTED**.

2. The Verified Complaint for Declaratory and Injunctive Relief (Doc. 1) is **DISMISSED**, without prejudice.[7]

3. The hearing scheduled for July 19, 2022, is cancelled.

4. The Clerk of the Court is directed to terminate any pending motions or deadlines as moot and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of July, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

lc28
Copies to:

Counsel of Record

---

[7]      Because the action is moot, the Court lacks subject matter jurisdiction.  As such, any dismissal must be without prejudice.  <u>Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.</u>, 524 F.3d 1229, 1232 (11th Cir. 2008) (noting that a dismissal for lack of subject matter jurisdiction is not a judgment on the merits and "is entered without prejudice.").